# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

VERONICA AGUAYO,
Defendant and Appellant.

S254554

Fourth Appellate District, Division One
D073304

San Diego County Superior Court
SCS295489

August 25, 2022

Justice Jenkins authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Liu, Kruger, Groban, and Guerrero concurred.

PEOPLE v. AGUAYO

S254554

Opinion of the Court by Jenkins, J.

After a physical altercation with her father, defendant Veronica Aguayo was charged with and convicted of both assault with a deadly weapon other than a firearm (Pen. Code,[1] § 245, subd. (a)(1)), and assault by means of force likely to cause great bodily injury (*id.*, subd. (a)(4)). Evidence that defendant hit her father with a bicycle chain and lock supported each aggravated assault conviction.

A defendant may be charged in an accusatory pleading with "two or more different offenses connected together in their commission" and "may be convicted of any number of the offenses charged." (§ 954.) In this regard, "[w]e have repeatedly held that the same act can support multiple charges and multiple convictions." (*People v. Gonzalez* (2014) 60 Cal.4th 533, 537 (*Gonzalez*).) However, if two alleged offenses are "different statements of the same offense" (§ 954), both offenses may be charged based on the same act, but convictions for both cannot stand. (See *People v. Vidana* (2016) 1 Cal.5th 632, 648 (*Vidana*).) The issue we confront here is whether "assault upon the person of another with a deadly weapon or instrument other than a firearm" (assault with a deadly weapon; § 245, subd. (a)(1)) and "assault upon the person of another by any means of force likely to produce great bodily injury" (force likely assault;

_____

[1] All further statutory references are to the Penal Code unless otherwise noted.

§ 245, subd. (a)(4)) are separate offenses, or whether they constitute "different statements of the same offense" (§ 954). The Courts of Appeal that have addressed this question have reached conflicting results. (See *post*, at p. 8.)

As we explain below, the answer to this question "turns on the Legislature's intent in enacting these provisions, and if the Legislature meant to define only one offense, we may not turn it into two." (*Gonzalez*, *supra*, 60 Cal.4th at p. 537.) In prior decisions involving section 954, we outlined specific factors to consider in examining the statutory language of the offense(s) before turning to other indicia of legislative intent. (See *People v. White* (2017) 2 Cal.5th 349 (*White*); *Vidana*, *supra*, 1 Cal.5th 632; *Gonzalez*, *supra*, 60 Cal.4th 533.) Having analyzed this case under that framework, we hold that assault with a deadly weapon (§ 245, subd. (a)(1)) and force likely assault (*id.*, subd. (a)(4)) are "different statements of the same offense" (§ 954).

We reverse the Court of Appeal's judgment affirming both convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 18, 2017, 43-year-old defendant Veronica Aguayo was working on her bicycle in her parents' yard. Her 72-year-old father, Luis Aguayo (Father), turned on the sprinklers to water the plants and accidentally got defendant's cell phone charger wet. Each testified at trial to their version of what happened next.

Father testified that defendant began yelling expletives and "came at" him with a bicycle chain and lock,[2] hitting him in the back. When she tried to hit him again, Father grabbed the lock and tried to wrest it from defendant's hands. When Father let go of the bicycle lock, defendant hit Father's head, arms, and chest with the lock approximately 15 times. Father grabbed the bicycle chain, and the two struggled back and forth until defendant slipped and pulled Father down on top of her. Defendant stood up and while Father was still on his knees, defendant grabbed a ceramic pot located nearby and threw it at him. It hit Father on a part of his head where he had previously had brain surgery. Father grabbed a rock to throw at defendant, but reconsidered and threw the rock away. The rock ricocheted off a nearby wall and hit defendant on the head.

As Father turned to go inside the house, defendant struck him with the bicycle chain on his chest, arms, and back. The two struggled once more over the bicycle chain, and Father wrested control of it. Defendant grabbed a rock and was about to hit Father with it, but her mother, who had appeared in the doorway, told her, "Don't do that." Defendant asked Father for the bicycle chain, which Father threw back to her. Defendant then rode away on her bicycle. Father opined that during the struggle defendant struck him with the bicycle chain approximately 50 times.

Defendant's account of the struggle diverged from Father's in several respects. She testified that she acted in self-defense.

---

[2]    At times, the record refers to the bicycle chain and lock as either the chain or lock or both, though the two appear to be one unit. The opinion tracks the description used by each witness during their testimony.

Initially, she confronted Father about her wet phone charger and he said, " 'I do what I want to do because this is my house.' " Defendant then called Father a "fucking asshole," and he started to come towards her. Fearful of Father, defendant started swinging the chain and yelled, "Get away from me. " Defendant hit Father in the head with the bicycle chain. Father charged at defendant and she hit him a second time with the bicycle lock. After he got hold of the bicycle lock, Father hit defendant's legs with it several times, though she did not sustain any visible injuries or bruises. According to defendant, Father threw the ceramic pot at her, not the other way around.

As relevant here, an amended information charged defendant with two offenses: (1) assault with a deadly weapon, with an enhancement allegation that she "personally used a dangerous and deadly weapon, to wit: bicycle chain/lock" (§§ 245(a)(1), 1192.7, subd. (c)(23); count 2); and (2) force likely assault (§ 245(a)(4); count 3). The jury found defendant guilty on both assault charges and found true the deadly-weapon-use enhancement allegation attached to count 2.

The trial court imposed concurrent sentences for these convictions but stayed the sentence on count 3 (force likely assault) under section 654. Defendant appealed, arguing that her conviction for force likely assault must be vacated because it is a lesser included offense of assault with a deadly weapon. The Court of Appeal rejected this claim, reasoning that an assault can be committed with an inherently deadly weapon without necessarily using force likely to produce great bodily injury. The court also rejected defendant's claim that the two convictions were impermissibly based on the same conduct, pointing to what it viewed as multiple acts of hitting Father with the bicycle chain and hitting his head with the ceramic pot.

However, it remanded to the trial court with directions to determine defendant's eligibility for a pretrial mental health diversion program. (See §§ 1001.35, 1001.36.) It conditionally reversed the judgment for this limited purpose.

After granting review, we subsequently directed the parties to answer the following questions: Are force likely assault and assault with a deadly weapon "different statements of the same offense for purposes of section 954? If so, must one of defendant's convictions be vacated?" Our opinion here addresses only the section 954 issue briefed by the parties.

## DISCUSSION

Defendant contends that the assault with a deadly weapon count and the force likely assault count are merely different ways of stating the same offense. Assuming we agree, she posits that because these counts arose from the same set of facts, she may be convicted of only one count. We agree with defendant's contention.

We begin our analysis by examining legal principles that guide our determination of when multiple charges in an accusatory pleading allege different offenses or represent "different statements of the same offense" under section 954.

### A. Different Statements of the Same Offense

Section 954 provides that "[a]n accusatory pleading may charge two or more different offenses connected together in their commission, or *different statements of the same offense* or two or more different offenses of the same class of crimes or offenses, under separate counts." (Italics added.) "The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be

convicted of any number of the offenses charged."[3] (§ 954; see *Vidana, supra,* 1 Cal.5th at p. 649.) One of section 954's objectives is to assist in a "just administration of the criminal law" — for instance, one trial involving multiple charges alleged in a single accusatory pleading would obviate the need for "another trial of the same facts with its attendant trouble and expense" on any withheld charges. (*People v. Piner* (1909) 11 Cal.App. 542, 547; see *People v. Sloan* (2007) 42 Cal.4th 110, 122 [explaining "legitimate future use of multiple convictions" pursuant to § 954].)

We have also stated that section 954 " 'does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct.' " (*Vidana, supra,* 1 Cal.5th at p. 650.) Put another way, " 'if a defendant cannot be convicted of a greater and a lesser included offense based on the same act or course of conduct, dual convictions for the same offense based on alternate legal theories would necessarily be prohibited.' " (*Ibid.*)

Whether statutory offenses charged in an accusatory pleading "define different offenses or merely describe different ways of committing the same offense properly turns on the Legislature's intent in enacting these provisions, and if the Legislature meant to define only one offense, we may not turn it into two." (*Gonzalez, supra,* 60 Cal.4th at pp. 537, 538–540 [oral copulation of intoxicated person and oral copulation of

---

[3] While a defendant may be properly convicted of different offenses based on the same act, he or she may be punished for only one of those offenses. (§ 654; see *People v. Jones* (2012) 54 Cal.4th 350, 358 ["Section 654 prohibits multiple punishment for a single physical act that violates different provisions of law"].)

unconscious person are different offenses]; see *White, supra,* 2 Cal.5th at pp. 354–359 [rape of intoxicated person and rape of unconscious person are different offenses]; accord, *Vidana, supra,* 1 Cal.5th at pp. 637, 647–649 [grand theft by larceny and grand theft by embezzlement are different statements of same offense].)

To determine such intent under the section 954 framework, we do not employ traditional principles of statutory interpretation, which are designed to ascertain the meaning of an ambiguous statute. Here, we must resolve any uncertainty about what the Legislature intended when it enacted assault with a deadly weapon and force likely assault, i.e., whether it intended to define two different offenses or two different ways of committing the same offense. (See *Vidana,* 1 Cal.5th at p. 637; *Gonzalez,* 60 Cal.4th at p. 537.) To that end, we consider the text and structure of the statutes; the elements of the two offenses; their prescribed punishments; and other indicia of legislative intent, including legislative history and the wider historical context of the statutes' enactment to resolve the question. (See *Vidana,* at pp. 637–647; *Carmack v. Reynolds* (2017) 2 Cal.5th 844, 850.) None of these individual factors is necessarily dispositive. (*Vidana,* at p. 648.) With these guiding principles in mind, we begin our analysis of the question before us by examining the statutory language of the aggravated assaults at issue.

### 1. *Statutory language of section 245*

Assault with a deadly weapon and force likely assault are separately set out in section 245, subdivision (a)(1) (section 245(a)(1)) and section 245, subdivision (a)(4) (section 245(a)(4)), respectively. (See Stats. 2011, ch. 183, § 1.) The former makes

it a crime to "commit[] an assault upon the person of another with a deadly weapon or instrument other than a firearm." (§ 245(a)(1).)  The latter makes it a crime to "commit[] an assault upon the person of another by any means of force likely to produce great bodily injury."  (§ 245(a)(4).)  The prescribed punishment for both forms of aggravated assault is identical: "imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment."  (§ 245, subd. (a)(1), (4).)

The lower courts are divided on whether these two types of aggravated assaults are, for purposes of section 954, separate offenses or the same offense.  (See, e.g., *People v. Brunton* (2018) 23 Cal.App.5th 1097 (*Brunton*) [different statements of same offense]; but see *In re Jonathan R.* (2016) 3 Cal.App.5th 963 [separate offenses]; cf. *In re C.D.* (2017) 18 Cal.App.5th 1021, 1029 [under § 245, subd. (c) assault with a deadly weapon and force likely assault against peace officer or firefighter are a single offense].)

Relying on *Brunton,* defendant argues that subparagraphs (a)(1) and (a)(4) of section 245 do "not plainly state whether, for purposes of section 954," they are different statements of the same offense or different crimes.  Focusing instead on section 245's legislative history, she maintains that the two aggravated assaults have been long understood to constitute but "one offense" (quoting *In re Mosley* (1970) 1 Cal.3d 913, 919, fn. 5 (*Mosley*)).  The Attorney General, for his part, argues that assault with a deadly weapon and force likely assault are separate offenses because they "are defined by different elements, listed in different self-contained subparagraphs, punished differently, and found together in a

8

subdivision that includes other assault crimes with separate elements and different punishments." He maintains that these considerations based on section 245's plain language signal the Legislature's intent to create separate offenses; he, therefore, suggests we need not resort to section 245's legislative history.

At the outset, we conclude that the text of section 245 does not definitively show whether the Legislature intended assault with a deadly weapon (§ 245(a)(1)) and force likely assault (§ 245(a)(4)) to be separate offenses or different statements of the same offense. First, our reading of section 245's express language reveals it does not, for instance, list the two aggravated assaults as part of "a series of acts, either of which separately or together, may constitute the offense." (*People v. Frank* (1865) 28 Cal. 507, 513 [under former § 470, " 'the falsely making,' 'altering,' 'forging,' 'counterfeiting,' 'uttering,' 'publishing,' 'passing,' 'attempting to pass,' any of the instruments or things therein mentioned, with the intent specified, is declared to be forgery"]; *People v. Ryan* (2006) 138 Cal.App.4th 360, 366–367 [same, following *Frank*].) Instead, as the Attorney General observes, section 245 lists each aggravated assault separately (see § 245, subds. (a)(1)–(4), (b), (c)), and each provision is what we have described as "self-contained" — that is, each "sets forth all the elements of a crime, and each prescribes a specific punishment," although the aggravated assaults at issue here prescribe the same punishment. (*Gonzalez*, *supra*, 60 Cal.4th at p. 539; see also § 245, subd. (a)(1), (4); see *ante*, at p. 8.)

It is not dispositive, however, that assault with a deadly weapon and force likely assault are "self-contained" in separate subparagraphs with separate punishments. (*Gonzalez*, *supra*, 60 Cal.4th at p. 539.) The Penal Code supplies numerous

examples of separate, "self-contained" provisions that constitute alternative means of committing a single offense. (See, e.g., *Vidana, supra,* 1 Cal.5th at p. 648 [though larceny (§ 484(a)) and embezzlement (§ 503) are contained in separate provisions, there is clear intent to create single crime of theft]; *People v. Duffy* (2020) 51 Cal.App.5th 257, 265 [carrying concealed firearm in a vehicle (§ 25400, subd. (a)(1)) or on the person (§ 25400, subd. (a)(3)) is "a singular offense"]; see *id.* at pp. 264–266; *People v. Ryan, supra,* 138 Cal.App.4th at p. 366 ["there was but one crime of forgery [§ 470, subds. (a), (d)], and that the various acts proscribed by the statute were simply different means of committing that offense"].)

Next, the Attorney General emphasizes that the two aggravated assaults appear to "differ in their necessary elements." (*Gonzalez, supra,* 60 Cal.4th at p. 539.) Assault with a deadly weapon requires the use of a deadly weapon or instrument, whereas force likely assault includes any application of force likely to cause great bodily injury, regardless whether any weapon or instrument is used.[4] (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1031 (*Aguilar*).) However, because force likely assault includes most assaults with a deadly weapon or instrument, in addition to force likely assaults in the absence of a weapon or instrument, there is significant overlap between the two offenses. (See *People v. McGee* (1993) 15 Cal.App.4th 107,

---

[4]  Compare these alternate provisions of CALCRIM No. 875: (1) "defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person"; and (2) "defendant did an act that by its nature would directly and probably result in the application of force to a person" and the force was "likely to produce great bodily injury").

115 ["force likely to produce great bodily injury was defendant's use of the deadly weapon, a knife"].)

In *Aguilar,* we described these two offenses as "functionally identical" — except with respect to inherently dangerous weapons — in that "[b]oth the 'weapon or instrument' clause of the statute and the 'force likely' clause look to the probability or capability of producing great bodily injury." (*Aguilar*, *supra*, 16 Cal.4th at p. 1033; *id.* at p. 1032, quoting *People v. Davis* (1996) 42 Cal.App.4th 806, 815 [" 'all aggravated assaults are ultimately determined based on the force likely to be applied against a person' "].) Thus, as we indicated in *Vidana*, a comparison of the offenses' elements does "not definitively resolve" whether assault with a deadly weapon and force likely assault "are a single offense." (*Vidana*, *supra*, 1 Cal.5th at p. 648 ["we have long held that premeditated murder and felony murder — although requiring different elements — are not distinct crimes but simply alternative means of committing the single offense of murder"].) As such, the fact that the two types of aggravated assaults are self-contained and have different elements reveals little of the Legislature's intent regarding this section 954 inquiry.

Next, we consider section 245's legislative history to ascertain the Legislature's intent. As we explain more fully below, when this legislative history is viewed in the context of our past decisions — which have described force likely assault "as an alternative" to assault with a deadly weapon (*Aguilar, supra*, 16 Cal.4th at p. 1030), and have stated that both types of assault constitute "one offense" (*Mosley, supra*, 1 Cal.3d at p. 919, fn. 5) — it becomes clear that the Legislature has tacitly approved the statements this court has made regarding the relationship between the two aggravated assaults. (See *People*

*v.* *Ledesma* (1997) 16 Cal.4th 90, 100–101 (*Ledesma*) ["'Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of [a] statute'" if it does not alter that construction by subsequent legislation].)

### 2. *Legislative history of section 245*

To place our evaluation of section 245's legislative history in context, we begin with the language of the section when it was initially enacted in 1872. Section 245 did not originally include force likely assault. As relevant here, it instead prohibited "an assault upon the person of another with a deadly weapon, instrument, or other thing." (Pen. Code, former § 245, enacted 1872; see *Aguilar, supra*, 16 Cal.4th at p. 1030.) We had occasion to interpret section 245 the year following its enactment, and we reversed a defendant's assault with a deadly weapon conviction because the indictment failed to allege the use of a deadly weapon pursuant to the statute: "'[T]he fact that a deadly weapon was resorted to by the prisoner is made by the statute itself an indispensable characteristic of such an assault, and one which distinguishes it from all others.'" (*Aguilar*, at p. 1031, italics omitted, quoting *People v. Murat* (1873) 45 Cal. 281, 283.)

Two years later, ostensibly in response to *Murat*, the Legislature added the "'force likely' clause *as an alternative* to the 'deadly weapon' clause" in former section 245, subdivision (a)(1). (*Aguilar, supra*, 16 Cal.4th at p. 1030, italics added.) The 1874 statute, as amended, provided: "Every person who commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, is punishable by imprisonment in the State Prison, or in a County Jail, not exceeding two years, or by fine

not exceeding five thousand dollars, or by both." (Former § 245, as amended by Code Amends. 1874, ch. 614, § 22, p. 428; see *Aguilar*, *supra*, 16 Cal.4th at pp. 1030–1033 [detailing history of § 245].) Thereafter, we had the opportunity to address section 245 once more in *Mosley*. We there observed that this amended version of section 245 "define[d] only one offense" and that force likely assault was "not an offense separate from" assault with a deadly weapon. (*Mosley*, *supra*, 1 Cal.3d at p. 919, fn. 5.) These two descriptions of aggravated assaults remained together in the same provision until 2011, when the Legislature amended and reorganized former section 245, subdivision (a)(1). (Stats. 2011, ch. 183, § 1.)

In amending section 245 in 2011, the Legislature identified the amendment's primary purpose: to split assault with a deadly weapon and force likely assault into separate paragraphs in the wake of a 2000 voter-approved initiative, Proposition 21, which imposed possible collateral consequences resulting from a conviction of the former, but not of the latter. (See *People v. Brown* (2012) 210 Cal.App.4th 1, 4, fn. 1.) Proposition 21 expressly added assault with a deadly weapon to the statutory "serious felony" list for purposes of applying the Three Strikes law. (§ 1192.7, subd. (c)(31); see also *People v. Myers* (2007) 148 Cal.App.4th 546, 554 [Prop. 21 " 'delete[d] for serious felony purposes the personal use requirement for assault with a deadly weapon' "].) However, Proposition 21, as enacted by the voters, did not designate force likely assault as a "serious" felony. (See *People v. Haykel* (2002) 96 Cal.App.4th 146, 148.) Because former section 245(a)(1) at the time included both forms of aggravated assaults, it was unclear from the face of a judgment reflecting a section 245(a)(1) conviction whether the conviction was subject to the adverse consequences of a "serious"

felony conviction.  (See *People v. Delgado* (2008) 43 Cal.4th 1059, 1072.)

As explained above, section 245's legislative history expressly states that the 2011 amendment made "technical, nonsubstantive changes" to address Proposition 21's effects on section 245.  (Legis. Counsel's Dig., Assem. Bill No. 1026 (2011–2012 Reg. Sess.).)  However, according to the bill's author, the amendment did "not create any new felonies or expand the punishment for any existing felonies.  It merely split[] an ambiguous code section into two distinct parts."  (Sen. Com. on Pub. Safety, Rep. on Assem. Bill No. 1026 (2011–2012 Reg. Sess.) as introduced Feb. 18, 2011, pp. 4–5; hereafter Report on Assem. Bill 1026.)  The Legislature further stated that the purpose of separating the two forms of assault in the 2011 amendment was to " 'reorganize[]' " section 245 to provide for a " 'more efficient assessment of a defendant's prior criminal history' " and " 'a more accurate and earlier disposition of criminal cases.' "  (Sen. Rules Com., Analysis of Assem. Bill No. 1026 (2011–2012 Reg. Sess.) as introduced Feb. 18, 2011, pp. 2–3.)  Having a judgment showing the "true nature" of a former section 245(a)(1) conviction — by indicating whether it was pursuant to subparagraph (a)(1) or (a)(4) — would allow a prosecutor to settle appropriate cases prior to a preliminary hearing and avoid "clogging the court system."  (Sen. Rules Com., Analysis of Assem. Bill No. 1026, *supra*, p. 3 ["it will be clear what type of an assault occurred"].)

Notably, our decisions in *Mosley* and *Aguilar* — indicating that former section 245 "defines only one offense" (*Mosley*, *supra*, 1 Cal.3d at p. 919, fn. 5), and reaffirming the view that force likely assault is " 'not an offense separate from' " assault with a deadly weapon (*Aguilar*, *supra*, 16 Cal.4th at p. 1036,

quoting *Mosley*, at p. 919, fn. 5) — both preceded the 2011 amendment to section 245. The Legislature is presumed to be aware of these earlier cases when it made what the legislative history described as "technical, nonsubstantive changes" to section 245 in 2011. (Legis. Counsel's Dig., Assem. Bill No. 1026 (2011–2012 Reg. Sess.); see *Ledesma*, *supra*, 16 Cal.4th at pp. 100–101.) Accordingly, had the Legislature intended in 2011 to create separate offenses by relocating force likely assault into its own paragraph, it presumably would have made that intent clear.

Supporting this conclusion is the fact that the Legislature, in otherwise amending section 245 to expand its scope, has expressly stated its intent to create new crimes. For example, in 1982, the Legislature "create[d] a new crime of assault with a firearm" under subdivision (a)(2) (Assem. Com. on Crim. Justice, Analysis of Assem. Bill No. 846 (1981–1982 Reg. Sess.) as introduced March 9, 1981, p. 3). And in 1989, in two separate bills, the Legislature added to section 245 the "new crime[s]"[5] of assault with a machine gun or an assault weapon under subdivision (a)(3) (Stats. 1989, ch. 18, § 1) and assault with a semiautomatic rifle under subdivision (b) (Stats. 1989, ch. 1167, § 1). Thus, the Legislature has expressly declared when statutory revisions to section 245 constitute new crimes.

Accordingly, we reject the Attorney General's argument that the 2011 amendment reflects the Legislature's intent to create two separate offenses for purposes of section 954.

---

[5]     See Legis. Counsel's Dig., Sen. Bill No. 292 (1989–1990 Reg. Sess.) ("the bill would create a new crime"); Legis. Counsel's Dig., Assem. Bill No. 1504 (1989–1990 Reg. Sess.) ("the bill would create a new crime").

Defendant, in our view, has the better argument. Section 245's legislative history — which reaches back to 1872 and reflects amendments that have expanded the number of offenses described in 245 through the years — makes clear when the Legislature amends section 245 to create a "new crime," it does so expressly. Our reading of this legislative history, combined with *Mosley*'s and *Aguilar*'s statement that force likely assault is " 'not an offense separate from' " assault with a deadly weapon (*Aguilar, supra*, 16 Cal.4th at p. 1037, quoting *Mosley, supra*, 1 Cal.3d at p. 919, fn. 5), and the Legislature's subsequent failure to indicate otherwise, convinces us that the Legislature intended assault with a deadly weapon and force likely assault to constitute "different statements of the same offense" for purposes of section 954. (See *Ledesma, supra*, 16 Cal.4th at pp. 100–101.)

### 3. *The Attorney General's Additional Arguments*

The Attorney General, for his part, does not dispute that the primary purpose of the 2011 amendment was to make it easier to identify from a judgment the conduct on which a section 245 conviction is based. He also concedes that assault with a deadly weapon and force likely assault at some point described "a single offense of aggravated assault." Nevertheless, he contends the Legislature's 2011 amendment to section 245, which reorganized section 245 by placing force likely assault and assault with a deadly weapon into "two distinct parts" (Report on Assem. Bill 1026, *supra*, p. 5), signaled the Legislature's intent to treat these forms of aggravated assaults as separate offenses. He asserts that "[c]oncluding that the two assault crimes in section 245, subdivision (a)(1) and (a)(4) are different statements of the same offense would be directly antithetical to the very point in separating them out into distinct subdivisions."

We are unpersuaded for several reasons. First, we assign little significance to the bill author's statement that the 2011 amendment sought to split former section 245, subdivision (a)(1) into "two *distinct* parts." (Report on Assem. Bill 1026, *supra*, p. 5, italics added.) The Attorney General argues this reveals a "clear intent to make 'distinct' assault provisions, which is the essence of an intent to create separate offenses under section 954." But the statement's use of the term "distinct" cannot bear the weight the Attorney General places on it. The Legislature clearly identified its express purpose for enacting the 2011 amendment. As noted above (see *ante*, at pp. 13–14), the reason for separating and distinguishing between these two types of assaults was merely to allow the court and parties to readily identify whether a resulting conviction would constitute a strike. Indeed, long before the 2011 amendment and consistent with that amendment's express purpose, we advised that even though section 245, subdivision (a) "define[d] only one offense," a resulting judgment should "specify which of the two categories of conduct prohibited by section 245 (i.e., assault (1) with a deadly weapon or instrument, or (2) by means of force likely to produce great bodily injury) was involved in the particular case." (*Mosley*, *supra*, 1 Cal.3d at p. 919, fn. 5.) "[S]uch a finding," we explained, "should be made for the benefit of probation and correction officials who may . . . attach significance thereto." (*Ibid*.)

Furthermore, as we have noted, had the Legislature sought to make them truly distinct offenses without any overlap (see *ante*, at pp. 10–11), it could have added language signaling this intent when it placed force likely assault in its own subdivision in 2011. By way of comparison, when the Legislature in 1982 established assault with a firearm as newly

17

added section 245, subdivision (a)(2), it did not simply *require* the use of a firearm in subdivision (a)(2) ("assault . . . with a firearm"); it simultaneously *excluded* the use of a firearm in subdivision (a)(1) ("assault . . . with a deadly weapon or instrument other than a firearm"). (Assem. Office of Research, Conc. in Sen. Amends. to Assem. Bill No. 846 (1981–1982 Reg. Sess.), as amended Sept. 11, 1981, p. 1 ["this bill: [¶] 1) [s]pecified . . . [assault with a deadly weapon or instrument] did not include assault with a firearm; and [¶] 2) [c]reated a new crime of assault with a firearm"].) This made clear that the offenses were discrete and presumptively separate.

It stands to reason that if the Legislature had wanted to make assault with a deadly weapon and force likely assault unmistakably separate, it would have utilized this same approach with the 2011 amendment. However, when it placed force likely assault in a different paragraph from assault with a deadly weapon, the Legislature did not add defining language to force likely assault — such as "without the use of a weapon or instrument" — to eliminate any perceived overlap of the two types of aggravated assaults. Instead, the Legislature made "technical, nonsubstantive changes" (Legis. Counsel's Dig., Assem. Bill No. 1026 (2011–2012 Reg. Sess.)), and underscored that the 2011 legislation did "not create any new felonies or expand the punishment for any existing felonies." (Sen. Rules Com., Analysis of Assem. Bill No. 1026 (2011–2012 Reg. Sess.) as introduced Feb. 18, 2011, p. 3; see *ante*, at pp. 13–14.)

Next, the Attorney General asserts that other portions of section 245's legislative history suggest the Legislature, in amending section 245 over the years, had an "overarching" purpose to create four separate subdivisions for aggravated assault. Asking that we construe section 245(a) and its series of

18

amendments as a whole, the Attorney General surmises that "it would be remarkable if the Legislature intended some of the subparagraphs in that provision to constitute separate offenses, while allowing other seemingly equal subparagraphs to stand as different statements of the same offense."

We are not persuaded that there is a singular purpose governing these amendments. For instance, the 1982 amendment adding assault with a firearm as a new crime had a specific punitive purpose "aimed at assuring that some time is served for offenses involving serious crimes." (Ways and Means Staff Analysis of Assem. Bill No. 846 (1981–1982 Reg. Sess.), as amended May 6, 1981; see Stats. 1982, ch. 136, § 1; see *People v. Milward* (2011) 52 Cal.4th 580, 585 ["the Legislature's apparent purpose was to require a *minimum* punishment of six months' imprisonment in county jail for aggravated assaults committed with a firearm"].) Likewise, the purpose of the 1989 amendment adding the crime of assault with a machine gun or assault weapon was to "eliminate from California society, except under limited circumstances, weapons essentially military or antipersonnel in nature which are considered to pose an intolerable threat to the well-being of the citizens of this state." (Sen. Com. on Judiciary, Analysis on Sen. Bill No. 292 (1989–1990 Reg. Sess.), as amended Feb. 27, 1989, pp. 4–5.) These substantial policy considerations for the earlier amendments that created new crimes stand in stark contrast to the underlying purpose of the 2011 amendment: to make "technical, nonsubstantive changes" (Legis. Counsel's Dig., Assem. Bill No. 1026 (2011–2012 Reg. Sess.)) and "not [to] create any new felonies or expand the punishment for any existing felonies" (Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 1026 (2011–2012 Reg. Sess.) as introduced Feb. 18, 2011, p. 2). In

short, we perceive no legislative intent mandating that the internal structure of section 245 be wholly consistent in the manner that the Attorney General suggests.

On a related point, the Attorney General contends "there is nothing inconsistent" between the legislative declaration that the 2011 amendment did " 'not create any new felonies' " and his argument "that the Legislature intended the two felonies to be distinct and separate." This argument would perhaps carry more weight if assault with a deadly weapon and force likely assault were considered separate offenses *prior to* the 2011 amendment. But as we have emphasized above, both assaults were combined in one paragraph beginning in 1874 when the Legislature added the " 'force likely' " clause " 'as an alternative' " to the "deadly weapon" clause. (*Aguilar*, *supra*, 16 Cal.4th at p. 1030.) We observed early on that far from setting out separate offenses, former section 245, subdivision (a)(1) "define[d] only one offense"; force likely assault "is not an offense separate from — and certainly not an offense lesser than and included within — the offense of assault with a deadly weapon." (*Mosley*, *supra*, 1 Cal.3d at p. 919, fn. 5.)

The Attorney General also relies on the fact that assault with a deadly weapon is classified as a serious felony (§ 1192.7, subd. (c)(31)), while force likely assault is not so classified (see *People v. Winters* (2001) 93 Cal.App.4th 273, 277). This distinction, he argues, establishes that these forms of aggravated assault are separate offenses. We agree that the basis for the 2011 amendment was to identify and give effect to this distinction. (See *ante*, at pp. 13–14.) However, we part ways with his suggestion that by classifying assault with a deadly weapon as a serious felony, the Legislature meant to define it as a separate offense.

20

For instance, the mere inclusion of assault with a deadly weapon as a serious felony under section 1192.7, subdivision (c)(31), does not necessarily reflect its status as a standalone offense, i.e., one that is separate from force likely assault. We have long rejected the view that section 1192.7 "consist[s] only of specific statutory offenses and enhancements." (*People v. Guerrero* (1988) 44 Cal.3d 343, 347.) Instead, we have recognized that the " 'list of serious felonies as set out in section 1192.7 and incorporated into section 667, is an amalgam of different elements,' " which include repealed felonies, a general reference to felonies punishable by death or imprisonment, enhancements that may attach to any felony, and "criminal conduct which does not correspond precisely to the elements of any then-existing criminal offense." (*Guerrero*, at p. 347.) That assault with a deadly weapon and not force likely assault is included in section 1192.7, subdivision (c) largely reflects that "a meaningful difference exist[s] between the two clauses" and the conduct proscribed by each clause (*Aguilar*, *supra*, 16 Cal.4th at p. 1030); it does not, without more, signal the Legislature's intent to create separate offenses. (See Couzens, Cal. Practice Guide: Sentencing California Crimes (The Rutter Group 2022) ¶ 20.4 [because § 1192.7 "frequently focus[es] on criminal conduct rather than a discrete code section, a number of additional convictions may be characterized as strikes simply because of the way the crimes were committed"].)

Nor do the strike consequences for a serious felony classification make assault with a deadly weapon an offense distinct from force likely assault for purposes of section 954. While differing punishments may indicate that offenses are independent from one another (see *Gonzalez*, *supra*, 60 Cal.4th at p. 539), punishment for committing an offense is "annexed,

*upon conviction*" (§ 15, italics added) and is a primary and direct result of the offense. In contrast, " 'the possibility of increased punishment in the event of a subsequent conviction,' " such as a prior conviction for a serious felony, is properly cast as a " 'collateral consequence' " (*People v. Buycks* (2018) 5 Cal.5th 857, 878), i.e., "one which does not 'inexorably follow' from a conviction of the offense . . . " (*People v. Crosby* (1992) 3 Cal.App.4th 1352, 1355). Put another way, the designation of assault with a deadly weapon as a serious felony for purposes of the Three Strikes law does not change the nature of its underlying punishment, which is identical to that of force likely assault. (See *ante*, at p. 8.)

Nor do we agree with the Attorney General that our holding requires that the jury be informed that a conviction for assault with a deadly weapon, but not for force likely assault, is considered a "serious" felony. That a defendant should be punished "under the provision that provides for the longest potential term of imprisonment" (former § 654)[6] is not a concern implicated here because the base term punishments for assault with a deadly weapon and force likely assault are the same. Moreover, even if the designation of a "serious" felony later increases a defendant's total term of imprisonment, "[i]nformation regarding the consequences of a verdict is . . . irrelevant to the jury's task . . . [and] providing jurors sentencing information invites them to ponder matters that are

---

[6] Effective January 1, 2022, newly amended section 654 provides that judges have discretion to sentence a defendant to any of the convicted crimes rather than the one that provides for the longest term of punishment. (Stats. 2021, ch. 441, § 1.)

not within their province . . . ." (*Shannon v. United States* (1994) 512 U.S. 573, 579.)

Lastly, we are unpersuaded by the Attorney General's policy arguments based on section 654. The Attorney General first suggests that if we were to conclude that assault with a deadly weapon and force likely assault were separate offenses, there would be little danger of multiple punishments on counts that arise from the same act or omission because section 654 would require a stay of punishment for one count where multiple convictions occur. (See *People v. Reed* (2006) 38 Cal.4th 1224, 1226–1227; *People v. Correa* (2012) 54 Cal.4th 331, 336.) While this may be true, it is beside the point. The issue before us is whether section 954 permits multiple convictions where, as we conclude here, the convictions are based on different statements of the same offense. Our decision in *Vidana* forecloses the possibility of multiple convictions where the two types of aggravated assaults constitute "different statements of the same offense." (§ 954; see *Vidana, supra*, 1 Cal.5th at p. 648.)

We likewise find unavailing the Attorney General's related policy argument permitting "an alternative conviction [that] may prevent the defendant from otherwise escaping justice" if one of the convictions is overturned. (See *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1128–1129.) Because force likely assault and assault with a deadly weapon are the same offense for purposes of section 954, any "alternative" conviction would in fact be duplicative and improper as a matter of law. (See *Vidana, supra*, 1 Cal.5th at p. 650; *People v. Coyle* (2009) 178 Cal.App.4th 209, 217 [three convictions for a single murder impermissible where "[t]he three counts simply alleged alternative theories of the offense"].)

Having carefully considered the Attorney General's arguments, we find ample support for our conclusion that assault with a deadly weapon and force likely assault are "different statements of the same offense" (§ 954). As such, defendant may not be convicted of both based on the same act or course of conduct. (*Vidana*, *supra*, 1 Cal.5th at p. 651.)[7]

## B. Same or Separate Acts

We now turn to the Attorney General's assertion that section 954 is no impediment to defendant's dual convictions for a different reason: they are based on separate acts. In support of this contention, the Attorney General relies largely on Father's trial testimony and opines that the jury could have found defendant guilty of both counts based on multiple different acts, "including the 50 times [defendant] hit her father with the bicycle chain or (as to count 3) her additional act of throwing the [ceramic pot] at his head." Based on defendant's own admissions, the Attorney General also argues that the jury had before it evidence that defendant "committed at least two separate assaults with the bicycle chain."

Defendant contends that the jury made no finding of fact that there were separate acts supporting the section 245(a)(1) and section 245(a)(4) convictions, respectively. Therefore, she argues it was conceivable that the jury impermissibly relied on

---

[7] We disapprove *In re Jonathan R.*, *supra*, 3 Cal.App.5th 963, which reached a contrary conclusion (see *ante*, at p. 8), to the extent it is inconsistent with this opinion.

Further, based on our holding that these two types of aggravated assaults are alternative means of committing the same offense, we need not determine whether force likely assault is a lesser included offense of assault with a deadly weapon.

the same act to convict defendant of both counts. As important, defendant asserts that an appellate court's determination that she struck Father twice with the bicycle chain and lock in two separately punishable acts would constitute judicial factfinding that "necessarily violates" the Sixth Amendment.

We agree with defendant that the jury did not make a finding of fact identifying which act supported which specific count. It did not make such finding because it was never asked to do so by way of the prosecution's argument, a unanimity instruction, or the like. (See *People v. Jennings* (2010) 50 Cal.4th 616, 679 (*Jennings*).) The prosecution did not identify the particular act supporting each aggravated assault, and it did little to differentiate between the two counts. For example, the charging allegation and verdict form did not specify the act of force defendant used to commit the force likely assault. The respective jury instructions (listing the element of whether "[t]he defendant did an act [with a deadly weapon other than a firearm] that by its nature would directly and probably result in the application of force to the person") also did not identify what act defendant committed for each count. (See *ante*, at p. 10, fn. 4.) During closing argument, the prosecution referred to defendant hitting Father with the bicycle chain to establish *both* the assault with a deadly weapon and force likely assault counts. At the same time, with regard to the force likely assault count, the prosecution referred to defendant using both the bicycle chain and the ceramic pot to assault Father.

Without conclusively determining the standard of prejudice applicable in this context, we are persuaded that there is a reasonable probability the jury would have convicted defendant of one or the other assault offense, rather than both, had the jury been instructed that the two offenses could not be

based on the same act or course of conduct. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) The record demonstrates that the prosecution and defense counsel viewed the offenses as essentially identical and based on the same act or course of conduct, which may in turn explain the absence of an unanimity instruction. (See *Jennings, supra,* 50 Cal.4th at p. 679 ["no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one transaction' "].) Given this shared understanding, it is reasonably probable that the jury understood the offenses in the same way.[8]

Contrary to the Attorney General's contention, the issue is not whether the jury *could have* found that defendant struck Father at least two times and up to 50 times — which would be relevant to whether there was sufficient evidence to sustain each conviction (see *People v. Banks* (2015) 61 Cal.4th 788, 804) — but whether there is a reasonable probability the jury failed to do so.

---

[8] We decline the Attorney General's invitation to address the application of *Vidana*'s "course of conduct" prong in this context (*Vidana, supra,* 1 Cal.5th at p. 648, fn. omitted). Our holding in this case does not depend on the view that individual acts within a course of conduct may not form the basis of separate convictions for the same offense. Instead, we confirm that the same course of conduct may not form the basis of separate convictions for the same offense. We express no opinion regarding the validity of the former. For similar reasons, we need not address whether the completed act rule applies to an otherwise single course of conduct. (See *People v. Harrison* (1989) 48 Cal.3d 321, 329 ["a new and separate violation of section 289 is 'completed' each time a new and separate 'penetration, however slight' occurs"].)

Nor are we, as a reviewing court, at liberty to accept the Attorney General's invitation to determine whether "the record as a whole provides an ample basis on which to conclude that the jury found two separate acts beyond a reasonable doubt based on [defendant's] admissions." It is axiomatic that criminal defendants are constitutionally entitled to " 'a jury determination that [they are] guilty of every element of the crime with which [they are] charged, beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 477.) Here, there is a reasonable probability that the jury would have convicted defendant of only one, and not both, aggravated assault offenses. In this circumstance, we cannot affirm based on our own view of what the evidence would support. (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 280 ["The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action"].) Further, defendant's admission that she struck Father at least two times with the bicycle chain does not inexorably show that the jury relied on separate acts in reaching its guilty verdicts.

Last, we reject the Attorney General's assertion that a reviewing court's authority to make such a finding to support the convictions is akin to a sentencing court's determination whether to impose concurrent or consecutive sentences under section 654. (See *People v. Carter* (2019) 34 Cal.App.5th 831, 841 ["Whether a defendant had multiple intents or objectives is a question of fact for the sentencing court"].) Unlike a jury determination of each element of a charged offense, the "imposition of consecutive terms . . . does not implicate a defendant's Sixth Amendment rights." (*People v. Black* (2007) 41 Cal.4th 799, 821.) Section 654 is largely a sentencing issue, which lies outside the historical province of a jury. (*Oregon v.*

*Ice* (2009) 555 U.S. 160, 168; *People v. Mosley* (2015) 60 Cal.4th 1044, 1057–1058.)

## CONCLUSION AND DISPOSITION

Based section 245's statutory language and legislative history — illuminated by statements we made in *Aguilar* and *Mosley* that have endured amid a series of amendments to the provision — we conclude that assault with a deadly weapon (§ 245(a)(1)) and force likely assault (§ 245(a)(4)) are "different statements of the same offense" (§ 954). We, therefore, conclude that a defendant may not be convicted of both types of aggravated assault based on the same act or course of conduct. (See *Vidana, supra,* 1 Cal.5th at p. 650.) Here, there is a reasonable probability that the jury viewed the two charged assault offenses as based on the same act or course of conduct. Thus, the Court of Appeal erred by determining for itself that defendant's "convictions are based on multiple acts — hitting her father with the bicycle chain and lock, and hitting him with the ceramic pot."

We therefore reverse the Court of Appeal's judgment and remand the matter for proceedings consistent with this opinion. (See *Vidana, supra,* 1 Cal.5th at p. 651, fn. 18 ["we express no opinion on whether striking the larceny conviction or the embezzlement conviction or consolidating the two convictions is the proper remedy"]; see, e.g., *People v. Craig* (1941) 17 Cal.2d 453, 458–459, overruled on another point in *White, supra,* 2 Cal.5th at p. 359.)

JENKINS, J.

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**GUERRERO, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Aguayo

---

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 31 Cal.App.5th 758
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S254554
**Date Filed:**  August 25, 2022

---

**Court:**  Superior
**County:**  San Diego
**Judge:**  Dwayne K. Moring

---

**Counsel:**

Linnéa M. Johnson and Howard C. Cohen, under appointments by the Supreme Court, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Julie L. Garland, Assistant Attorney General, Meredith S. White, Warren Williams, Junichi P. Semitsu and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Howard C. Cohen
Appellate Defenders, Inc.
555 West Beech Street, Suite 300
San Diego, CA 92101
(619) 696-0282

Steve Oetting
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
(619) 738-9207