Filed 10/14/24  P. v. Lopez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CRISTIAN CORTES LOPEZ,<br><br>    Defendant and Appellant. | F087183<br><br>(Super. Ct. No. DF017520A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Rex Adam Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Christian Cortes Lopez appeals his convictions on one count of assault with a deadly weapon by a prisoner (Pen. Code,[1] § 4501, subd. (a); count 1) and one count of assault by means of force likely to produce great bodily injury by a prisoner (§ 4501, subd. (b); count 2). Appellant contends there was insufficient evidence to support his conviction for count 1 and that he could not be properly convicted of both counts 1 and 2 under section 954. For the reasons set forth below, we modify the judgment and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2023, appellant was charged by information with two charges and multiple related enhancements. Relevant to the issues raised in this appeal, in count 1, the People alleged appellant "and Luis Sanchez, did willfully and unlawfully, while confined in the California Department of Corrections and Rehabilitation—[North Kern State Prison], commit an assault upon the [victim] with a deadly weapon or instrument, in violation of Penal Code section 4501[, subdivision (a)], a felony." (Some capitalization omitted.) In count 2, the People similarly alleged appellant "and Luis Sanchez, did willfully and unlawfully, while confined in the California Department of Corrections and Rehabilitation—[North Kern State Prison], commit an assault upon the [victim] by any means of force likely to produce great bodily injury, in violation of Penal Code section 4501[, subdivision (b)], a felony." (Some capitalization omitted.) Appellant was eventually tried before a jury on both counts.

Correctional Officer Jose Casillas witnessed the alleged assault and testified regarding his observations. Casillas explained he was the only officer in the area and distributing mail when he heard a scream coming from the second floor. Casillas looked toward the sound and noticed a fight occurring. Two inmates, appellant and Sanchez,

---

[1] Undesignated statutory references are to the Penal Code.

were striking a third inmate. The inmates were using closed fists and striking multiple blows to the third inmate's head and facial area. Casillas could not see any weapons.

The victim struck back and then fled toward nearby stairs. Casillas announced a "code one" on his radio to summon backup and ordered all inmates in the area to get into a prone position. As other inmates complied, appellant and Sanchez continued to chase their victim who was running toward Casillas, having come downstairs to the lower level. Casillas utilized his pepper spray on the victim and appellant, causing appellant to "g[e]t down." Sanchez did not stop, and Casillas used his pepper spray a second time.

On cross-examination, Casillas stated that appellant and Sanchez caught up to the victim at the bottom of the stairs leading to the area where Casillas was standing and began striking the victim in the "facial and upper torso area" with balled-up fists. Again, Casillas did not see any weapons. The entire incident lasted approximately 20 seconds. During that time, Casillas did not see either appellant or Sanchez with a weapon and did not see them make any specific stabbing motions. However, he did notice blood on the victim.

Correctional Officer Omar Herrera conducted a further investigation and search of the area where the assault occurred and testified regarding those acts. In that investigation, Herrera did not discover or collect any weapons. Similarly, when appellant and Sanchez were searched, no weapons were found. Herrera explained that failing to find a weapon is a common occurrence in prison assaults given the dorm-style setting of the area and the number of inmates to whom weapons may be passed during an incident.

Prison Nurse Paul Enriquez next testified to the injuries suffered by the victim. Enriquez catalogued 18 injuries to the victim, ranging from scratches and abrasions to puncture wounds. Relevant to this appeal, the victim suffered three puncture wounds to the front of their body and 10 puncture wounds to their back. The wounds in this case were relatively small, "[p]robably the size of a pen," but caused substantial bleeding. Enriquez explained that a puncture wound is not the type that would result from a punch,

3.

but rather covers wounds that pierce the skin—"anything from a pinpoint needle, or sometimes a stab wound." Based on these wounds, the victim was eventually sent out of the prison for a higher level of care.

Correctional Officer Jacob Valdez provided additional testimony regarding the victim's wounds. Valdez investigated the incident and took pictures of the injuries. He noted that the injuries to the victim's arms and torso were circular, consistent with a cylindrical weapon used in prison stabbings.

Finally, Correctional Investigator Romero Ayala Angeles confirmed that no weapons related to the assault were found and that he did not recall or document finding blood on the hands of appellant or Sanchez. However, Angeles explained that a search done in response to the incident resulted in the discovery of at least 10 prisoner-made weapons and that such items were found on a nearly daily basis.

Following the close of evidence, appellant brought a motion for acquittal under section 1118.1. In that motion, appellant argued the evidence failed to show great bodily injury and that appellant had a weapon. In opposing the motion with respect to count 2, the prosecutor claimed sufficient evidence existed to proceed under a single attack theory, explaining that "given the number of strikes, the location of those strikes, and the fact that they are delivered in a rapid manner, and after the victim's attempt to flee, it's an ongoing, prolonged attack, all of which amounts to an assault that is done with force likely to cause great bodily injury." The court ultimately denied the motion.

The court then proceeded through jury instructions and closing arguments. Relevant to this appeal, the court did not give an unanimity instruction to the jury.[2] The prosecutor argued in line with the single assault theory during closing argument, including: arguing that the attack began at the top of the stairs and "doesn't end until the

[2]	A standard instruction for this situation is CALJIC No. 17.01, which instructs the jury that when the prosecution has introduced evidence showing more than one act upon which a conviction can be had, all jurors must agree the defendant committed the same act or omission.

officer has to use OC spray, pepper spray"; describing the victim's injuries as "on both sides of his body, as well as on his back, from that moment when he's ultimately attacked, trying to run away at the bottom of the stairs"; explaining the two charges by saying "there are two separate counts, but overall, we're talking about the same incident"; and arguing that there was force likely to cause great bodily injury by explaining "the assault … started in the upper left tier area. It continues across the tier. It continues down the stairs. It continues to the bottom.… It's all of it altogether. It's the repeated strikes and stabs at the victim .… All the more likely to cause someone great bodily injury."

Ultimately, the jury convicted appellant on counts 1 and 2, but did not reach a decision on the great bodily injury enhancements. Following further proceedings, the court sentenced appellant to the upper term for both counts but stayed the sentence on count 2 under section 654. This appeal timely followed.

## DISCUSSION

Appellant challenges the sufficiency of the evidence supporting his conviction on count 1 and the fact he was convicted of both counts 1 and 2. We consider each argument in turn.

### *Sufficient Evidence Supports the Conviction on Count 1*

Appellant claims in his first argument that insufficient evidence supports the jury's conclusion that he possessed and utilized a deadly weapon in the attack. Appellant's arguments do not contend that no deadly weapon was used, but rather focus on the alleged lack of evidence supporting a claim appellant used a weapon.

*Standard of Review and Applicable Law*

Count 1 in this case alleged appellant violated section 4501, subdivision (a), which provides that "every person confined in the state prison of this state who commits an assault upon the person of another with a deadly weapon or instrument shall be guilty of a felony .…"

On a challenge to the sufficiency of evidence supporting a conviction or to support the denial of a section 1118.1 motion, we " ' "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence ….' " (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.) " ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " (*People v. Holt* (1997) 15 Cal.4th 619, 668.) This standard is high, requiring an appellate court to "accept logical inferences that the jury might have drawn from the evidence even if the court would have concluded otherwise." (*People v. Combs* (2004) 34 Cal.4th 821, 849.)

*Sufficient Evidence Support's Appellant's Conviction on Count 1*

Appellant contends there is insufficient evidence to demonstrate that he used a deadly weapon in the attack. Appellant notes in his argument that the evidence generally shows two attackers, neither of whom were specifically seen engaging in stabbing motions and neither of whom were found with a weapon. Appellant contends that either surmise or conjecture is required to conclude appellant actually used a deadly weapon in the attack. We do not agree.

Although the evidence does not directly confirm who possessed and used a deadly weapon in the attack, there remains circumstantial evidence regarding the nature of the fight and the wounds sustained that create a reasonable logical inference that both appellant and Sanchez were in possession of and used a deadly weapon in the attack. As Casillas testified, the fight was very short in duration, approximately 20 seconds, despite

6.

spanning two locations.  Both appellant and Sanchez were seen striking the victim in both locations and engaged in strikes both when the victim was facing and fleeing from them. Testimony from Enriquez and Valdez shows that despite the short duration of the fight, the victim suffered 13 puncture wounds, with wounds occurring on both the left and right sides of their body.  The testimony from Herrera, Valdez, and Angeles confirms that prisoner-made weapons are regularly located in the prison, but often not found after attacks, and would make puncture wounds like those found on the victim.  Taken together, the number, locations, and type of injuries the victim suffered in a short span of time are sufficient evidence of an attack by two armed individuals and support appellant's conviction.  Had the puncture wounds been minimal in number or if blood was found on Sanchez but not appellant, any inference of both perpetrators being armed would have been minimized.  But as noted above, we will not reverse a conviction if the facts justify the necessary findings, even if " ' " 'the circumstances might also be reasonably reconciled with a contrary finding .…' " ' " (*People v. Holt, supra*, 15 Cal.4th at p. 668.)

### *Appellant Was Improperly Convicted of Both Counts 1 and 2*

Appellant alleges in his second argument that he was improperly convicted of two offenses that cover the same crime and were based on the same conduct.  Appellant's argument relies upon section 954, the guidance set forth in *People v. Aguayo* (2022) 13 Cal.5th 974 (*Aguayo*), and the general parallels between the crime described in section 4501 and the crime of assault described in section 245.

*Standard of Review and Applicable Law*

Under section 954:  " 'An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts .…  The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the

defendant is convicted must be stated in the verdict or the finding of the court ….' " (*People v. Vidana* (2016) 1 Cal.5th 632, 649, italics omitted.) The statute thus " 'authorizes multiple convictions for different or distinct offenses, but does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct.' " (*Id.* at p. 650.)

In *Aguayo*, our Supreme Court considered whether section 245, subdivision (a)(1), criminalizing assault with a deadly weapon, and section 245, subdivision (a)(4), criminalizing assault by means of force likely to produce great bodily injury, constituted different statements of the same offence and, in that case, whether Aguayo could be convicted of both charges where the evidence showed a physical altercation where Aguayo "hit her father with a bicycle chain and lock." (*Aguayo, supra*, 13 Cal.5th at p. 979.) Relying on the language of the statute and legislative history showing that both types of assault were originally part of the same offense until, in 2011, the Legislature split them in order to make convictions easier to classify for purposes of classifying prior offenses during sentencing, the court found that these were two formulations of the same offense and not different offenses for the purpose of dual convictions under section 954. (*Aguayo*, at pp. 981–993.) It is well settled that the " 'elements of the offenses set forth in sections 4501 and 245, subdivision (a), are identical in all respects except that section 4501 requires, as an additional element, that the defendant be a prisoner confined in a state prison.' " (*People v. Abelino* (2021) 62 Cal.App.5th 563, 582, fn. 16.)[3]

Under the Sixth Amendment to the United States Constitution, two convictions for the same offense which are based on the same course of conduct cannot be justified by evidence which could show multiple violations occurred unless the jury necessarily made such a finding. (*Aguayo, supra*, 13 Cal.5th at pp. 993–994.) "Our standard of review is

---

[3] In this appeal, the People do not contest that subdivisions (a) and (b) of section 4501 constitute alternative descriptions of the same offense.

de novo as to those parts of the appeal that raise questions of law and mixed questions of law and fact. 'In the constitutional realm … [the United States Supreme Court has] often held that the role of appellate courts "in marking out the limits of [a] standard through the process of case-by-case adjudication" favors de novo review even when answering a mixed question primarily involves plunging into a factual record.' " (*People v. Reneaux* (2020) 50 Cal.App.5th 852, 863.)

*The Record Does Not Support Two Separate Convictions*

Relying on *Aguayo*, appellant contends he was improperly convicted twice of the same offense based on a single course of conduct. The People do not challenge the application of *Aguayo* to cases involving convictions under section 4501 but, relying on *People v. Johnson* (2007) 150 Cal.App.4th 1467 (*Johnson*) and similar cases, contend that appellant was properly convicted of multiple offenses under section 4501 based on a claim the assault constituted more than one course of conduct. The resolution of this issue turns on whether *Aguayo* or *Johnson* is more applicable to the facts of this case.

In *Aguayo*, after concluding that assault with a deadly weapon and assault with force likely to cause great bodily injury describe the same offense, the court considered the claim "that section 954 is no impediment to [Aguayo]'s dual convictions for a different reason: they are based on separate acts." (*Aguayo*, *supra*, 13 Cal.5th at p. 993.) Aguayo had struck her father with a bicycle chain more than 50 times and had also thrown a ceramic pot at his head. (*Ibid*.) The Supreme Court explained that the multiple strikes were insufficient to show the jury had properly convicted Aguayo of two separate offenses based on several relevant facts. These included that "the jury did not make a finding of fact identifying which act supported which specific count." (*Id*. at p. 994.) The court reached this conclusion for several reasons, including because the jury was not asked to make such a finding, the prosecution never identified the particular acts supporting each assault claim and argued in a manner that implied the use of the chain could satisfy both charges, and the jury instructions did not identify the charged acts or

9.

include an unanimity instruction. (*Ibid.*) According to the court, the relevant question was whether there was "a reasonable probability the jury failed to" determine how many times the victim was struck and, ultimately, whether there was a "reasonable probability that the jury would have convicted [Aguayo] of only one, and not both, aggravated assault offenses." (*Id.* at p. 995.)

In *Johnson*, our sister court in the Sixth District affirmed a conviction wherein Johnson was convicted of three counts of corporal injury to a cohabitant based upon multiple injuries inflicted during a single course of action. (*Johnson, supra,* 150 Cal.App.4th at pp. 1473–1474.) *Johnson* involved three distinct charges brought under section 273.5, a crime "complete upon the willful and direct application of physical force upon the victim, resulting in a wound or injury." (*Johnson*, at p. 1477.) The factual scenario presented to the jury showed Johnson beat the victim "about the face and head; held her by her throat up against the wall; beat her on her back, hips, and legs; and stabbed her in the upper arm." (*Ibid.*) From these facts, the court found "the jury could have concluded that [Johnson] completed one violation of section 273.5 when he beat [the victim] about the head and face …; another when he held her by the throat …; and another when he injured her upper arm .…" (*Ibid*.) Notably, given the structure of the argument raised, there was no discussion regarding the jury instructions or the general presentation of evidence.

We conclude that *Aguayo* controls. The record in this case closely parallels the record in *Aguayo* and is materially distinct from *Johnson*. Similar to *Aguayo*, the information failed to identify the acts supporting each charge, the instructions did not require the jury to reach unanimity regarding which acts supported each conviction, and the prosecutor generally argued the case as a single assault and not as multiple criminal violations. Further, in contrast to *Johnson*, there were not multiple charges asserting the same violation, leaving the jury no choice but to identify multiple offenses to support each charge. As in *Aguayo*, had the jury been instructed that multiple offenses had to be

10.

supported by separate factual findings, it is reasonably probable that the jury would have convicted appellant of only one, and not both, assault offenses.  Accordingly, appellant's dual convictions cannot stand under the facts of this case.

Having found that appellant's dual convictions are improper, we briefly consider the proper remedy.  Appellant requests this court strike count 1 but does so in part on the related but rejected contention that there is insufficient evidence to support that charge.  Our Supreme Court, in *Aguayo*, took no position on whether the proper remedy is to strike one or the other charge, or consolidate the two convictions.  (*Aguayo, supra*, 13 Cal.5th at p. 996.)

Our Supreme Court did cite, however, to *People v. Craig* (1941) 17 Cal.2d 453, 458–459, overruled on another point in *People v. White* (2017) 2 Cal.5th 349, 359, which held that consolidation of the judgment is within the court's power and serves to protect the defendant's interests.  Further, in this case, consolidation will not affect appellant's final sentence.  Appellant does not challenge the imposition of the upper term for his sentence, and there are no enhancements or other modifiers that would change depending on whether count 1 or count 2 remains.  Given the jury's conviction on both statements of the assault offense, consolidation into a single conviction of assault with a deadly weapon and by means of force likely to produce great bodily injury (§ 4501, subds. (a), (b)) "preserves all of those jury findings, and does not increase the severity of defendant's sentence." (*People v. Coyle* (2009) 178 Cal.App.4th 209, 218.)  We thus conclude that modification of the sentence to reflect appellant was convicted of committing one count of assault with a deadly weapon and by means of force likely to produce great bodily injury is appropriate.

## DISPOSITION

The judgment on count 1 is modified to reflect appellant was convicted of assault with a deadly weapon and by means of force likely to produce great bodily injury (§ 4501, subds. (a), (b)).  Appellant's assault conviction in count 2, together with the

11.

sentence imposed but stayed on that count, is reversed and vacated. In all other respects, the judgment is affirmed.

The trial court is directed to prepare an amended abstract of judgment and minute order to reflect the modifications and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.



HILL, P. J.

WE CONCUR:


DETJEN, J.


SMITH, J.