Filed 3/11/25  P. v. Ashley CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DENARD ASHLEY,<br><br>    Defendant and Appellant. | A172264, E082372<br><br>(San Bernardino County<br>Super. Ct. No. FSB23001475) |

Denard Ashley was charged with, among other offenses, assault with a deadly weapon on one of the victims in this case. (Pen. Code, § 245, subd. (a)(1) (section 245(a)(1)).)  At the close of the People's case, Ashley moved for an acquittal on this count, arguing the evidence was insufficient to establish the elements of the offense.  The trial court granted the motion in part and, without objection from Ashley, modified the charge into one for assault with force likely to produce great bodily injury (hereafter force-likely assault).  (Pen. Code,[1] § 245, subd. (a)(4) (section 245(a)(4)).)  Ashley now contends this was error because force-likely assault under section 245(a)(4) is not a lesser included offense of assault with a deadly weapon under section 245(a)(1).

---

[1] Undesignated statutory citations are to the Penal Code.

1

We conclude Ashley forfeited this argument by failing to object in the trial court. We further reject Ashley's backup ineffective assistance of counsel argument because the record in this direct appeal does not show that his counsel had no rational tactical reason for failing to object. We will therefore affirm the judgment.

## BACKGROUND

In April 2023, Ashley was living in his car in Jane Doe's driveway. Living in the house with Doe were two of her sons, Tr. and Ty., ages 16 and 18, respectively. Doe and Ashley argued one night, and Doe told Ashley to leave.

The next morning, Doe was sitting in the living room with Tr. and her grandchildren when Ashley came into the house very upset. Ashley called Doe a "bitch" and pushed her on the couch or slapped her hands. This upset Tr., so he pushed Ashley. Tr. squared up and prepared to fight Ashley. Ashley said, "Do you want to die today?" Ashley was wearing a cross-body satchel or bag, and Tr. assumed Ashley had a weapon in it. Tr. went to the hallway and got a broom.

Tr. saw Ty. in the hallway and said that Ashley was trying to kill him and had hit Doe. Ty. looked up and saw Ashley charging in his direction, with Doe in between them. Ashley tackled or pushed Doe into the doorway of the restroom off the hallway. Doe fell to the floor, and Ashley got on top of her.

Ty. began punching Ashley. Tr. started swinging the broom to help Ty. Ashley pulled a four- to five-inch knife out of his bag and swiped up at Ty.'s throat, cutting him on the neck. Ashley got

up. Ty. went to help Tr. and Doe tackle Ashley in the living room, and he felt cuts on his shoulder and leg.

Ashley, Doe, Tr., and Ty. all struggled to get control of the knife. Doe grabbed the knife by the blade, while Tr. had his hands around Ashley's hands and Ty. held down Ashley's forearm. Tr. eventually twisted the knife out of Ashley's grasp.

Ty. and Doe went to the restroom because blood was gushing from Ty.'s leg wound. After calling 911, Tr. came to the restroom and held towels on Ty.'s wounds to stop the bleeding.

Tr. sustained a small cut on his thumb during the incident. Ty. had a cut to his neck and stab wounds to his shoulder and thigh that both required stitches. He had a knot on his forehead and a scratch on the back of his head from Tr. hitting him with the broom by mistake. The broom broke into pieces. Ty. was also bleeding from one ear. Doe sustained a bruise to her elbow and injuries to her shoulder.

The People charged Ashley with assault with a deadly weapon against Ty. under section 245(a)(1) (count 1), assault with a deadly weapon against Tr. (count 2), and corporal injury resulting in a traumatic condition upon Doe under section 273.5, subdivision (a) (count 3). The People also alleged that Ashley had a prior strike and that various aggravating circumstances applied.

At the close of the prosecution's case, Ashley moved for acquittal on all counts, but specifically addressed count 2, assault with a deadly weapon on Tr. Ashley argued that there was no evidence to substantiate the elements of the offense, such as a fear of imminent battery or Ashley's intent with regards to Tr. The

3

prosecutor opposed, citing evidence that Ashley threatened Tr. by asking whether he wanted to die, Ashley did not let go of the knife when all four of them were on the ground in the living room, and Tr. wound up being cut by the knife. The trial court said that from its notes, it did not appear that Ashley was "targeting" Tr. with the knife during the melee in the hallway.

After the prosecutor maintained that she had presented sufficient evidence based on the course of conduct before the knife was brought out towards Tr., the trial court had the following exchange with the prosecutor:

"[Trial] Court: Wouldn't it just be a battery then or an assault?

"[Prosecutor]: (a)(4)? Yeah.

"[Trial] Court: Because I think [Ashley's counsel] is correct, I don't think the defendant assaulted Tr. --

"[Prosecutor]: With the knife specifically?

"[Trial] Court: -- with the knife.

"[Prosecutor]: So lesser of (a)(4)? I would agree based on how the evidence came out with the testimony.

"[Trial] Court: And then the secondary is then when the brother [Ty.] gets involved, that's when the knife comes out, and the fight is on. It's assault with force likely.

"[Prosecutor]: (a)(4), yes."

The trial court told Ashley's counsel, "So I guess your motion is granted in part. But Count 2 is (a)(4), which is assault with force likely." The trial court denied the motion as counts 1 and 3.

4

The court said in conclusion that "the case goes to the jury, at least at this point, three counts with the modification the Court made."

Ashley asked the court to bifurcate trial on the prior strike and aggravating factors. The jury found Ashley guilty of assault with a deadly weapon upon Ty., assault with force likely to produce great bodily injury on Tr., and corporal injury resulting in a traumatic condition on Doe. The trial court found true the prior strike allegation and some of the aggravating factors alleged in the information.

At sentencing, the trial court denied Ashley's motion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, but it did not impose any aggravated term. On the count of assault with a deadly weapon upon Ty., the trial court sentenced Ashley to the middle term of three years in prison, doubled to six years because of the strike. The trial court imposed a concurrent three years doubled to six years on the count of assault with force likely to produce great bodily injury on Tr., and a concurrent term of 321 days on the misdemeanor count of corporal injury on Doe. It awarded Ashley 321 total days of credits.

## DISCUSSION

Ashley argues the trial court erred by reducing the charge of assault with a deadly weapon under section 245(a)(1) to force-likely assault under section 245(a)(4) because the latter is not a lesser included offense of the former. He argues based on this court's decision in *People v. Pack* (2023) 88 Cal.App.5th 218 that the variance between the charged offense and the convicted offense violates due process.

5

We need not consider the merits of this argument because Ashley forfeited it by failing to raise it in the trial court. " '[A]s a general rule, "the failure to object to errors committed at trial relieves the reviewing court of the obligation to consider those errors on appeal." [Citations.] This applies to claims based on statutory violations, as well as claims based on violations of fundamental constitutional rights. [Citations.] [¶] The reasons for the rule are these: " 'In the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.' " ' " (*People v. Salazar* (2016) 63 Cal.4th 214, 239–240.)

Ashley's counsel moved for an acquittal on count 2. But when the trial court, after a colloquy with the prosecutor, indicated that it intended to modify the charge to one for force-likely assault, Ashley's counsel said nothing. By failing to object on the ground he now raises—that force-likely assault is not a lesser included offense of assault with a deadly weapon—Ashley prevented the trial court from addressing the issue and correcting its ruling.

Ashley insists that he preserved the claim by arguing for a total acquittal on count 2, indicating that his counsel believed that there was insufficient evidence of count 2 or any lesser included charge. But Ashley's argument here is not that the evidence is

insufficient to support his conviction for force-likely assault. Rather, he argues, as in *People v. Pack, supra*, 88 Cal.App.5th 218, that he lacked notice of the charge of force-likely assault, in violation of due process. Ashley raised no due process concerns in the trial court, and thus did not preserve the argument he now raises.

In a fallback position, Ashley contends that even if his counsel forfeited the issue by failing to object, the mistake demonstrates that he received ineffective assistance of counsel. To prevail on such a claim, Ashley " 'must show that [his] counsel's performance was deficient, and that the deficiency prejudiced the defense.' [Citations.] On direct appeal, a finding of deficient performance is warranted where '(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.' [Citation.] '[W]here counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.)

The record in this direct appeal does not support Ashley's ineffective assistance of counsel argument. The record does not reveal Ashley's counsel's reasons for not objecting, and he could have had a valid tactical reason for failing to do so. If Ashley's counsel had pointed out the trial court's error, for example, the trial court might have denied Ashley's motion outright. Despite

7

the trial court's ruling, there was evidence that could have supported a conviction for assault with a deadly weapon. The trial court was focused on whether there was evidence that Ashley was targeting Tr. with the knife in the hallway when he stabbed Ty. But as the prosecutor pointed out, Tr. was injured later when he was wrestling the knife away from Ashley. Given that Tr. was in fact injured, the jury could have found the elements of assault with a deadly weapon satisfied during the struggle over the knife in the living room. (See CALCRIM No. 875 [elements of assault with a deadly weapon].)

In light of this evidence, Ashley's counsel could have viewed his motion as weak and decided to accept a reduction of the offense rather than pushing further for an outright acquittal on the count that might have caused the prosecutor to dig in and led the trial court to reconsider. This is because the reduced charge materially improved Ashley's position. As the People note, a conviction for assault with a deadly weapon triggers the "Three Strikes" law in a subsequent prosecution, but a conviction for force-likely assault does not. (See *People v. Aguayo* (2022) 13 Cal.5th 974, 986–987.) Ashley's counsel could have therefore chosen to settle for obtaining this benefit for Ashley by accepting the reduction to force-likely assault, instead of gambling that the trial court would acquit him entirely on count 2. Ashley's counsel may have also considered that if he objected that count 2 could not be reduced to force-likely assault, the trial court would have instead reduced it to a different lesser included offense, such as simple assault, rather than acquitting him entirely. (See CALCRIM No. 875 [listing simple

assault as a lesser included offense of assault with a deadly weapon and force-likely assault]; *People v. Fugit* (2023) 88 Cal.App.5th 981, 991–992 [discussing this aspect of CALCRIM No. 875].)  His counsel could have viewed conviction on another lesser included offense as more likely than conviction on force-likely assault.

Because this is not a case in which there is no conceivable reason for Ashley's counsel to fail to object, we cannot find ineffective assistance of counsel in this direct appeal.

## DISPOSITION

The judgment is affirmed.

_____
BROWN, P.J.

We concur:

_____
STREETER, J.

_____
SIMONDS, J.*

*People v. Ashley* (A172264, E082372)

* Judge of the Sonoma Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10