Filed 7/7/25  P. v. Toral CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H051954 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. 23CR00960) |
| v. | |
| ALBERTO SOLIS TORAL, | |
| Defendant and Appellant. | |

This case arises out of a series of residential burglaries in Santa Cruz.  A jury convicted Alberto Solis Toral of, among other things, multiple counts of residential burglary and identity theft.  Toral now appeals and challenges his residential burglary convictions, asserting error in a jury instruction on other crimes evidence.  He also challenges three of his identity theft convictions on the ground that they concern the same act or course of conduct.  As explained below, we reject both challenges and affirm the judgment.

## I. BACKGROUND

### A. The Burglaries

On February 22, 2023, D.D. was playing with her two dogs in her yard.  Noticing that sliding glass doors into her house were ajar, D.D. checked her security cameras and

saw that someone had earlier opened one of the doors. After calling the police, D.D. found several things missing, including some jewelry.

The following day, A.K. was gardening in her yard and unable to see the front door of her house, which was unlocked. When she went inside, she noticed several things were missing, including her wallet, which contained both a credit card and a debit card. A.K. called her bank, which informed her that in the last hour there had been three charges to her credit card: one at 3:56 p.m. in a clothing store, a second at 4:02 p.m. in a convenience store, and a third at 4:09 p.m. in a liquor store. After A.K. called the police, an officer visited the stores and obtained surveillance footage that showed a man using A.K.'s credit card at the specified times.

Two days later, H.A. received fraud alerts from her bank and discovered a voice message from a neighbor saying that earlier someone had entered her property. H.A. searched for, but could not find, her purse, which contained car keys, a wallet, and several credit and debit cards.

On February 28, 2023, two days after the last robbery, R.H. saw a man who resembled a photograph in an e-mail about the individual who had been burglarizing nearby residences. R.H. alerted the police, who apprehended the man, identified him as Toral, and in his backpack discovered D.D.'s jewelry, A.K.'s credit cards, and H.A's keys, purse and credit cards. While police were returning H.A.'s items, a man returned her wallet, which contained a health care card with Toral's name and photograph.

## B. The Charges

On March 1, 2023, the day after Toral was apprehended and arrested, the Santa Cruz County District Attorney filed a criminal complaint against him. Ultimately, Toral was charged with three counts of first degree residential burglary in violation of Penal Code section 459, five counts of identity theft in violation of Penal Code section 530.5, subdivision (a), as well as several other felonies and misdemeanors.

2

## C. The Trial

In November 2023, the case proceeded to trial before a jury. On November 30, 2023, after 15 days of trial, the jury rendered its verdict.

### 1. *The Charged Crimes Evidence Instruction*

On the third day of trial, the People filed a motion in limine seeking permission to present evidence of charged crimes pursuant to Evidence Code section 1101, subdivision (b). Over Toral's objection, the trial court granted the motion and permitted the People to present such evidence for the purpose of proving identity, intent, or a plan.

The trial court also gave the jury an instruction on charged crimes evidence. After noting that the People had presented evidence that Toral committed the residential burglaries charged, this instruction informed the jury that it could consider such evidence "as it relates to all" of the charged burglaries only if the People proved beyond a reasonable doubt that all the burglaries had occurred: "You may consider this evidence as it relates to all of the charged first [degree] residential burglaries only if the People have proved beyond a reasonable doubt that the defendant in fact committed all of the first degree residential burglaries."

The instruction also told the jury that, if proven beyond a reasonable doubt, evidence of individual burglaries could be considered for the purpose of determining identity, intent, or the existence of a plan: "If the People have proved beyond a reasonable doubt that the defendant committed one or more of the first degree residential burglaries, you may, but are not required to, consider that evidence for the additional limited purpose of deciding whether: [¶] The defendant was the person who committed the other first degree residential burglaries alleged in this case; or [¶] The defendant acted with the intent to enter a building and commit a theft and/or identity theft in the other burglaries charged in this case; or [¶] The defendant had a plan or scheme to commit the other burglaries alleged in this case." Finally, the instruction noted that a finding of guilt for one burglary was "not sufficient by itself to prove that the defendant is

3

guilty of the other charged offenses" and that "[t]he People must still prove each charge beyond a reasonable doubt."

### 2. *The Verdict*

The jury found Toral guilty of all five counts of identity theft—including three counts involving the use of A.K.'s credit card on the day of the second burglary—as well as the first two counts of residential burglary (concerning D.D.'s and A.K.'s residences) and several other charges. However, it found Toral not guilty of grand theft, and it failed to reach verdicts on the third residential burglary count (concerning H.A.'s residence) and two other charges. On the prosecutor's motion, the trial court dismissed these last three counts.

### 3. *Sentencing*

The court sentenced Toral to a total of six years eight months, consisting of four years for the D.D. burglary, consecutive to one year four months for the A.K. burglary, eight months for the D.D. identity theft, and eight months for the H.A. identity theft. The court imposed two-year sentences for each of the three A.K. identity theft convictions but stayed those sentences.

Toral filed a timely notice of appeal.

## II. DISCUSSION

### A. The Other Crimes Evidence Instruction

Toral contends the trial court erred in instructing the jury on other crimes evidence. We review claims of instructional error de novo, independently reviewing the language of the instruction in question and evaluating whether it accurately states the law. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579; *People v. Alvarez* (1996) 14 Cal.4th 155, 220.) We conclude that there was no reversible error.

### 1. *Charged Crimes*

The trial court instructed the jury that, in deciding whether Toral committed a residential burglary, it could consider evidence of other charged residential burglaries for

4

the purpose of determining identity, intent, or existence of a plan "[i]f the People have proved beyond a reasonable doubt that the defendant committed one or more of the first degree residential burglaries." Toral argues that this instruction is erroneous because Evidence Code section 1101, subdivision (b) permits consideration of uncharged—but not charged—crimes. We disagree.

Contrary to Toral's suggestion, Evidence Code section 1101 does not distinguish between charged and uncharged crimes. To the contrary, the section permits juries, for appropriate purposes, to consider evidence of other "crime": "Nothing in this section prohibits the admission of evidence that a person committed a *crime*, civil wrong, or other act when relevant to prove some fact (such as . . . intent, . . . plan, . . . [or] identity . . .) other than his or her disposition to commit such an act . . . ." (Evid. Code, § 1101, subd. (b), italics added.) Accordingly, the California Supreme Court has held that Evidence Code section 1101, subdivision (b) "applies not only to evidence of uncharged misconduct [citations], but also to evidence (already admitted) of charged offenses." (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1161.)

We therefore conclude the trial court correctly instructed the jury that it could consider charged crimes, if proven beyond a reasonable doubt, as evidence of identity, intent, or a plan.

### 2. *Burden of Proof*

Toral also asserts that the other crimes evidence instruction was confusing and may have led the jury to convict him without finding proof beyond a reasonable doubt. We agree that portions of the instruction were confusing. However, we are not persuaded that this confusion led the jury to apply a lower standard of proof or otherwise prejudiced Toral.

As the Supreme Court recently stressed, " ' "[a] defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the

5

defendant." ' " (*People v. Hin* (2025) 17 Cal.5th 401, 492 (*Hin*).) In determining whether a jury may have erroneously interpreted an instruction, we assume that " ' " 'jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.' " ' " (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 475 (*Sattiewhite*).) Moreover, we examine " ' " 'the entire charge of the court, not . . . parts of an instruction or . . . a particular instruction.' " ' " (*Hin*, at p. 492)

Toral contends that the second paragraph of the other crimes evidence instruction misled the jury into not requiring proof beyond a reasonable doubt. In fact, that paragraph informed the jury that it could consider evidence of the charged residential burglaries only on the condition that all the burglaries were proven "beyond a reasonable doubt": "You may consider this evidence as it relates to all of the charged first [degree] residential burglaries only if the People have proved *beyond a reasonable doubt* that the defendant in fact committed all of the first degree residential burglaries." (Italics added.) Elsewhere, the instruction likewise told the jury that it could consider evidence of the residential burglaries "[i]f the People have proved beyond a reasonable doubt that the defendant committed one or more of the residential burglaries" and that "[t]he People must still prove each charge beyond a reasonable doubt." In addition, the trial court earlier instructed that "the People must prove a defendant guilty beyond a reasonable doubt," and "[w]henever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt." Toral does not explain how, despite these repeated admonitions to apply the reasonable doubt standard, " ' "intelligent persons . . . capable of understanding and correlating all jury instructions" ' " (*Sattiewhite*, *supra*, 59 Cal.4th at p. 475) could have believed that they could apply a different, lower standard of proof.

This is not to say that the second paragraph of the other crimes evidence instruction is a model of clarity. To the contrary, as Toral observes, it is somewhat "mystifying." The instruction tells the jury that it may consider each first degree burglary charged "as it relates to all of the charged first [degree] burglaries." The instruction also

6

says that evidence of the residential burglaries may be considered for this purpose only if the People proved "the defendant in fact committed all of the first degree residential burglaries." In other words, the instruction permits the jury to use evidence of the residential burglaries for an unclear purpose if those burglaries already have been proven. As Toral points out, by authorizing consideration of the residential burglaries only if they already have been proven, this instruction appears to render the authorization "surplusage." We agree. However, Toral fails to explain how this "surplusage" prejudiced him. This is especially true as the jury did not convict Toral of the third residential burglary and therefore the second paragraph's condition for considering the charged burglaries—that all of the burglaries were proven—was not satisfied.

Toral also contends that the jurors may have been confused by the instruction's suggestion that evidence of a residential burglary may be used to show that he acted with intent to commit identity theft when he committed another burglary, because identity theft "is a crime occurring after the burglary." However, Toral does not deny that evidence of residential burglaries properly could have been used as evidence of intent to *later* commit identity theft, nor does he explain how such use could have adversely affected the jury's verdict on any count.

We therefore conclude that there was no reversible error in the other crimes evidence instruction.

## B. Identity Theft Counts

In addition to challenging the other crimes evidence instruction, Toral challenges his three identity theft convictions relating to A.K. Counts 5, 6, and 7 of the second amended information contained nearly identical language: Each stated that "[o]n or about February 24, 2023, in the County of Santa Cruz, State of California, the crime of Identity Theft in violation of Penal Code [section] 530.5(a), a Felony, was committed in that ALBERTO SOLIS-TORAL did willfully and unlawfully obtain personal identifying information of [A.K.] and used that information for an unlawful purpose and to obtain,

7

and attempt to obtain credit, goods, services, real property, and medical information without the consent of [A.K.]." Toral argues that these counts cannot support three separate convictions because they rest on the same act or course of conduct. We disagree.

Toral correctly points out that an individual may not be convicted of more than one offense based on a single act or course of conduct. Under Penal Code section 954, "[a]n accusatory pleading may charge two or more different offenses connected together in their commission, . . . under separate counts . . . ." However, this section "does not authorize multiple convictions for different statements of the same offense." (*People v. Vidana* (2016) 1 Cal.5th 632, 651.) To the contrary, "if two alleged offenses are 'different statements of the same offense' ([Pen. Code,] § 954), both offenses may be charged based on the same act, but convictions for both cannot stand." (*People v. Aguayo* (2022) 13 Cal.5th 974, 993.) Different convictions must be based on different acts—even though a defendant may have had "the same intent and objective" in committing multiple crimes and the crimes were committed "at or near the same time." (*People v. Kopp* (2019) 38 Cal.App.5th 47, 62, review granted on another issue Nov. 13, 2019, S257844.)

Toral's identity theft convictions rested on separate and distinct acts. After A.K.'s credit card was stolen, she told an officer that someone had used her card without permission at three separate times in three separate places: 1) at 3:56 p.m. at a clothing store; (2) at 4:02 p.m. at a convenience store, and (3) at 4:09 p.m. at a liquor store. Surveillance footage confirmed that Toral used the credit card in each of the specified stores at each of the specified times. Thus, while all three offenses arose out of the theft and subsequent use of A.K.'s credit card, they involved three separate and distinct transactions and therefore support three separate convictions.

Toral argues in his reply brief that the allegations in the second amended information failed to provide adequate notice because they did not provide any details

8

concerning the transactions at issue.  (Cf. *People v. Mancebo* (2002) 27 Cal.4th 735, 745 ["no factual allegation in the information or pleading in the statutory language informed defendant that if he was convicted of the underlying charged offenses, the court would consider his multiple convictions as a basis for One Strike sentencing"].)  Because this argument was not raised in Toral's opening brief, and the Attorney General has not had an opportunity to respond to it, it has been forfeited, and we do not reach it.  (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 408 [deeming argument "forfeited by the failure to raise it in the opening brief"].)

### III. DISPOSITION

The judgment is affirmed.

_____
BROMBERG, J.

WE CONCUR:

_____
DANNER, ACTING P. J.

_____
WILSON, J.

*People v. Toral*
H051954