Filed 5/15/26  P. v. Yanez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEVEN ANDREW YANEZ,<br><br>    Defendant and Appellant. | F089088<br><br>(Super. Ct. No. BF193772A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  David R. Zulfa, Judge.

Ashwini Mate, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary and Caitlin Franzen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

### INTRODUCTION

In 2021, appellant Steven Andrew Yanez got into a dispute and physical altercation with two clerks inside a Bakersfield market that also resulted in Yanez

causing more than $400 worth of damage to the store. In 2024, a jury convicted Yanez of felony vandalism (Pen. Code,[1] § 594, subds. (a)(2) & (b)(1)) and two counts of misdemeanor assault. (§ 240).

In doing so, the jury acquitted Yanez of two counts of assault with a deadly weapon against the two clerks (Counts 1 and 2; § 245, subd. (a)(1)),[2] as well as a separate single count of assault with force likely to cause great bodily injury against one of them (Count 3; § 245, subd. (a)(4)). Instead, the jury returned two simple assault verdicts as lesser included offenses of Counts 1 and 3. The first conviction was based on the "stick" assault on the first clerk alleged in Count 1. The second involved the force likely count charged in Count 3, and was based on Yanez punching the first clerk in the face during the brouhaha. Yanez was entirely acquitted of assaulting the second clerk.

The trial court imposed an upper–term three–year sentence on the felony vandalism conviction, and doubled it to six years based on a strike prior the jury also found true. (See § 667, subd. (e).) For the two misdemeanors, the court imposed a concurrent statutory maximum of six months on the first conviction (§ 241, subd. (a)), and another six months on the second misdemeanor which was stayed under section 654.

Yanez raises two claims on appeal:

(1) The misdemeanor assault convictions must be reversed because the statute of limitations for the two 2021 offenses had lapsed prior to the 2024 convictions; and (2) The sentence on the felony vandalism conviction was unlawful because it was based in part on four aggravating sentencing factors that Yanez had neither admitted nor waived his right to a jury trial.

---

[1] All undesignated statutory references are to the Penal Code.

[2] The prosecution's alleged deadly weapon was a "wooden stick," an approximately three foot long, one inch by one inch piece of wood. (See Defense Exhibit F.)

The People respond that Yanez's statute of limitations claim was forfeited by his acquiescence in the trial court's jury instruction on misdemeanor assault as a lesser included offense of the felony assault counts. They concede that the sentence on the vandalism conviction must be reversed and remanded because Yanez was entitled to a jury's determination of those four factors and the trial court's failure to obtain a jury waiver or admissions from Yanez was prejudicial error.

We reject Yanez's first contention but agree with the parties as to the second.

## **DISCUSSION**

Because our review does not depend on the details of the offenses themselves, we need not relate them beyond what was described above. The first issue before us involves whether Yanez may for the first time on appeal contest the validity of his two 2024 misdemeanor assault convictions that were based on two 2021 offenses when the statute of limitations for misdemeanor assault is one year. The second issue focuses on how the trial court arrived at the sentence it imposed on the felony vandalism conviction.

## I. The 2024 Misdemeanor Convictions for 2021 Offenses.

### A. Background.

On March 22, 2023, Yanez was arraigned on a complaint filed on March 3, 2023, almost two years after the charged offenses were alleged to have been committed on April 7, 2021; the record does not explain the delay in filing. In addition to a felony vandalism count, the complaint charged Yanez with two felony assault counts under section 245, subdivision (a)(1) and one count under section 245, subdivision (a)(4).[3]

Prosecution for both types of felony assault charged here must "be commenced within three years after commission of the offense." (§ 801.) The prosecution's original

---

[3] An additional felony was also charged. When police responded to the scene and took Yanez into custody, he was uncooperative. However, the jury acquitted him of feloniously resisting a law enforcement officer (§ 69) and two lesser included misdemeanor offenses (§§ 148, subd (a)(1) & 240).

three aggravated assault charges were thus timely "commenced" when Yanez was arraigned on them in March 2023.  (§ 804, subd. (c).)  On the other hand, prosecution for misdemeanor assault must "be commenced within one year after commission of the offense."  (§ 802, subd. (a).)

A jury "may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged[.]"  (§ 1159.)  Misdemeanor assault is necessarily included in felony assault.  (See, e.g., *People v. Alderson* (1930) 105 Cal.App. 202, 202–203.)  "The limitation of time applicable to an offense that is necessarily included within a greater offense is the limitation of time applicable to the *lesser* included offense, *regardless of the limitation of time applicable to the greater offense*."  (§ 805, subd. (b), italics added.)

As discussed, the jury acquitted Yanez on all three felony assault counts and instead returned guilty verdicts on two misdemeanor assaults as lesser included offenses.  However, a prosecution for a 2021 misdemeanor assault had not timely "commenced" — either when the original complaint was filed in 2023 or when the jury's verdicts were reached in 2024  — because the statute of limitations had expired.

The parties do not dispute whether simple assault is a necessarily included offense of aggravated assault, either under section 245, subdivision (a)(1) or (a)(4).  Nor do they disagree that the statute of limitations for simple assault had run before the felony complaint in this matter was filed in 2023.[4]  They also agree that this statute of limitations dilemma was not raised or discussed in the trial court.

_____

[4] Although statutes of limitations may be tolled while a prosecution against the same person for the same criminal conduct is pending or ongoing (see § 803, subd. (b)), it is inapplicable here because the prosecution for this 2021 matter was not "commenced" until 2023, long after the misdemeanor one–year limitation period had already passed, i.e., it was neither pending nor ongoing.

In *People v. Williams* (1999) 21 Cal.4th 335 (*Williams*), our Supreme Court considered the question whether a defendant could raise a statute of limitations claim for the first time on appeal. (*Id.* at p. 339.) In its answer, the court focused on the charging documents, and concluded: "[W]hen the charging document indicates *on its face* that the action is time–barred, a person convicted of a *charged* offense may raise the statute of limitations at any time." (*Id.* at p. 341, italics added.)

In *Williams*, the flaw was apparent on the face of the information, and the court thus rejected the People's forfeiture argument, even though "[a]pparently, no one noticed this problem until the case was on appeal … and defendant did not assert the statute of limitations in the trial court." (*Id.* at pp. 339, 341.) Notably. the *Williams* court did not address a situation like ours, where the charging document presents no facial statute of limitations defect. However, the court was aware of the problem:

> "Conviction … of a lesser offense than the one charged involves separate concerns and problems not present here. Issues regarding lesser offenses may arise in a variety of factual contexts. We express no opinion on the proper resolution of any such questions but leave them for future appellate courts to decide in cases that actually present them. Today's decision involves only a conviction of a charged offense that, so far as the face of the charging document shows, is untimely." (*Williams, supra,* 21 Cal.4th at p. 346.)

Even while limiting its holding, the *Williams* court warned " 'trial courts and prosecutors that whenever a … court considers whether to instruct the jury on a lesser offense, they should determine whether there may be a problem with the statute of limitations regarding that offense. If so, the court should elicit a waiver of the statute as a condition of … giving the instruction.' " (*Id.*, 21 Cal.4th at p. 346, fn. 5.) But once more, the *Williams* court left it "to future courts … to decide the legal significance of the

5.

absence of an express waiver following conviction of a time–barred lesser offense." (*Ibid.*)[5]

Since then, two appellate courts have addressed the question left unanswered in *Williams* and concluded that "[w]hen the charging document does *not* indicate on its face the action is time–barred, the forfeiture rule applies." (*People v. Martinez* (2017) 10 Cal.App.5th 686, 715 (*Martinez*), italics added; see also *People v. Thomas* (2007) 146 Cal.App.4th 1278, 1289 (*Thomas*), disapproved on other grounds in *People v. Shockley* (2013) 58 Cal.4th 400, 405 ["[T]he principal policy considerations that persuaded the Court to retain the nonforfeiture rule in *Williams* are inapplicable where the charging document is facially sufficient."].) We agree with *Martinez* and *Thomas*. Forfeiture is therefore not necessarily foreclosed in our case by *Williams*.

It is well–settled that "a trial court must instruct the jury on a lesser included offense, *whether or not the defendant so requests*, whenever evidence that the defendant is guilty of only the lesser offense is substantial enough to merit consideration by the jury." (*People v. Choyce* (2025) 18 Cal.5th 86, 104 (*Choyce*), italics added; see *People v. Birks* (1998) 19 Cal.4th 108, 112.) Evidence is substantial in this context if a reasonable jury could find it persuasive. (*Choyce, supra,* 18 Cal.5th at p. 104.) Considering the jury in this case rejected both kinds of greater assault offenses, and convicted only on their lessers, it would be hard to conclude that the evidence for the lessers here was anything "less" than substantial.

At the same time, "[a]s a general rule, the trial court need only instruct on the statute of limitations when it is placed at issue *by the defense* as a factual matter in the trial." (*People v. Smith* (2002) 98 Cal.App.4th 1182, 1192, italics added.) Thus, if the

---

[5] Justices Kennard and Brown dissented in *Williams*, expressing their view that the statute of limitations is an affirmative defense and it is thereby forfeited by a defendant if it was not raised in the trial court, regardless of the pleadings. (*Id.,* 21 Cal.4th at pp. 347–351 (dis. opns. of Kennard and Brown, JJ.).)

"defendant did not raise any dispute as to the factual application of the statute of limitations, the court had no obligation to give an instruction to the jury to factually resolve any statute of limitations question." (*Id.* at p. 1193.)  Instead, the "proper challenge" for a defendant to later make on appeal "is not that the court failed to instruct [on the statute of limitations issue] but, rather, that he has the right to raise the issue for the first time on appeal, pursuant to *Williams*[.]" (*Ibid.*)

## B.  The Jury Instructions.

Returning to our case, the following colloquy occurred:

"THE COURT: The next thing I'd like to do is go through the jury instructions and put our jury–instruction conference on the record.

[¶] … [¶]

THE COURT: I gave …  [CALCRIM No.] 875 for assault with a deadly weapon, not a firearm.  I gave [CALCRIM No.] 875 for assault with force likely to produce great bodily injury.  I created a special instruction regarding [§ 245, subd. (a)(4)] as a lesser included offense to the [two § 245, subd. (a)(1) offenses] and directing the jury to the instruction for [the § 245, subd. (a)(4) offense].  [¶] And that was with the input and *the request of the parties, correct,* [defense counsel]*?*  (Italics added.)

"[DEFENSE COUNSEL]: Yes.

"THE COURT:· And [prosecutor]?

"[PROSECUTOR]: Yes, Your Honor.  I did, however, object to [§] 245(a)(4) being given as a lesser [of § 245, subd. (a)(1)].

"THE COURT: And based on the Court's research, including the *Beasley* case that was previously cited, and there was another case — I believe it was *Aguayo*… I felt it was appropriate to give that as a lesser to the [§] 245(a)(1), and that was over the People's objection.  [¶] *You did request that, correct,* [defense counsel]*?*"[6]  (Italics added.)

---

[6] Apparently referring to *People v. Beasley* (2003) 105 Cal.App.4th 1078 (*Beasley*), discussed further below, and *People v. Aguayo* (2022) 13 Cal.5th 974 (*Aguayo*), where the court held "that assault with a deadly weapon (§ 245, subd. (a)(1))

"[DEFENSE COUNSEL]: Yes.

"THE COURT: Any additional record, [defense counsel]?

"[DEFENSE COUNSEL]: No, Your Honor.  Thank you."

The court next stated it would give CALCRIM No. 915 — the instruction for misdemeanor simple assault — along with several other instructions, but neither party mentioned nor objected to CALCRIM No. 915.  The record does not indicate who, if anyone, had requested this particular instruction.

"THE COURT: Any additional record, [defense counsel]?

"[DEFENSE COUNSEL]: No, Your Honor. Thank you.

"THE COURT: [Prosecutor]?

"[PROSECUTOR]: No, Your Honor."

After discussing several other instructions, the court concluded by assuring the record of the jury instruction conference was complete:

"THE COURT: Were there any other objections that I had not previously placed on the record, [defense counsel]? …  Did you request any instructions that were rejected by the Court?

"[DEFENSE COUNSEL]: No.

"THE COURT: [Prosecutor], did you — did I give any instructions over your objection that I have not already put on the record?

"[PROSECUTOR]: No, Your Honor.

"THE COURT: Did you request any instructions that I rejected?

"[PROSECUTOR]: No, Your Honor.

---

and force likely assault (*id*., subd. (a)(4)) are 'different statements of the same offense,' " and although a defendant can be charged under both sections, they can only be convicted of one. (*Aguayo, supra*, 13 Cal.5th at p. 979.)  *Aguayo* is not a lesser included offense case, or a statute of limitations case, and is otherwise irrelevant here.

"THE COURT: Is there anything else we need to place on the record related to the jury–instruction conference, [defense counsel]?

"[DEFENSE COUNSEL]: Not from my end.

"THE COURT: [Prosecutor]?

"[PROSECUTOR]: No, Your Honor."

In their closing arguments, both counsel spoke about the substantive issues and the facts, but neither talked about lesser included offenses. Defense counsel's summation was that Yanez was factually not guilty given the evidence, and even included an argument for self–defense. The prosecutor rebutted similarly. In the end, neither counsel said a word about lesser included offenses nor described to the jury how they worked.

Instead, it was left to the court. The court explained to the jury what lessers were and how they were to be determined. It told the jury that for the two section 245, subdivision (a)(1) "stick" counts, the first lesser to be considered was section 245, subdivision (a)(4), and that section 240 was the "lesser of the lesser." As for the separate section 245, subdivision (a)(4) count based on the punch to the clerk's face, the court instructed the jury that its only lesser included offense was section 240.

## C. Analysis.

To resolve the forfeiture question before us, we find ourselves in the interstices between three previous Court of Appeal decisions: *People v. Stanfill* (1999) 76 Cal.App.4th 1137 (*Stanfill*), *People v. Meza* (2019) 38 Cal.App.5th 821 (*Meza*), and *Beasley, supra,* 105 Cal.App.4th 1078.[7]

---

[7] The Supreme Court denied review in *Meza*, although Chin and Corrigan, JJ., were of the opinion review should be granted. (*People v. Meza,* rev. denied Nov. 13, 2019, S258071.) No petition for review was filed in either *Stanfill* or *Beasley*, but the Supreme Court has acknowledged *Stanfill* without disapproval in another context. (*People v. Simon* (2001) 25 Cal.4th 1082, 1104, fn. 15.)

The parties cite all three decisions and argue how and why each is applicable (or inapplicable) to our case. Yanez relies on *Meza* and *Beasley* and distinguishes *Stanfill*. The People champion *Stanfill*, distinguish *Meza* and *Beasley*, and also add Justice McKinster's dissenting opinion in *Meza* into the mix. (See *Meza, supra,* 38 Cal.App.5th at pp. 832–836 (dis. opn. of McKinster, J.).) While all three cases (almost) agree on the underlying legal principles, each case has slightly different facts. So too does ours.

In *Stanfill*, the defendant was charged in 1997 with felony embezzlement by a public officer (§§ 504, 514) for acts beginning in 1993. The jury acquitted on that count and instead returned a verdict on a lesser included misdemeanor of embezzling less than $400. (*Stanfill, supra,* 76 Cal.App.4th at p. 1139–1143.) Although an unreported dispute arose about the felony count and its lesser included offenses, relevant here was the fact that *the defense* had asked for instructions on a lesser included offense of petty theft, to which the *prosecution did not object*, as well as instructions on lesser included offenses in general, and even one on the statute of limitations. (*Id.* at p. 1142, fn. 1.)

The *Stanfill* court found the case was "a model example of conviction of a time–barred lesser offense 'when the charged offense is not time-barred' [citing *Williams*], and [took] up the *Williams* majority's invitation to decide whether a forfeiture should result in this situation." (*Stanfill, supra,* 76 Cal.App.4th at p. 1146.) The court concluded that "a defendant forfeits the right to complain on appeal of conviction of a time–barred lesser included offense where the charged offense was not time–barred and the defendant *either requested or acquiesced* in the giving of instructions on the lesser offense. In other words, a defendant must raise the issue in the trial court in order to preserve it for appeal." (*Stanfill, supra,* 76 Cal.App.4th at p. 1150, italics added.) This was necessary to prevent "gamesmanship or sandbagging" by the defense. (*Id.* at p. 1148.) "Without a rule that acquiescence or failure to object acts as a forfeiture, the defendant may remain quiet about a limitations problem, avoid the ritual of formal waiver and then, as an ace up

10.

his sleeve, secure reversal on the theory that he never expressly waived. This is an unconscionable result that calls for a forfeiture rule." (*Ibid.*)

Rejecting a counter–argument that "an unwary defendant" who did not realize the problem — or was not adequately informed by his trial attorney about the issue — should not be subject to the drastic remedy of forfeiture, the *Stanfill* court found that such considerations were adequately protected by the more factually detailed review of habeas corpus, where "meritorious claims would remain redressable[.]" (*Stanfill, supra,* 76 Cal.App.4th at pp. 1149–1150.)

In *Meza,* the defendant was charged with felony child endangerment two years after he had assaulted his daughter. (See § 273a, subd. (a).) Conversely from *Stanfill,* "[a]t *the People's request and without objection from Meza*, the trial court directed the jury that it could find him guilty of felony child endangerment or the lesser included offense of misdemeanor child endangerment. A jury found him not guilty of the felony, but guilty of the misdemeanor." (*Meza, supra,* 38 Cal.App.5th at p. 823, italics added.)

On appeal, Meza contended the one–year statute of limitations had run on the misdemeanor. The People responded that Meza had forfeited the claim because his trial attorney had assented to the prosecutor's requested jury instructions without objection.

The *Meza* court began by observing that, unlike in *Stanfill*:

"[T]he *prosecutor* submitted a list of requested jury instructions [that] *included a request for an instruction on the lesser included misdemeanor offense*. However, the prosecutor did not request an instruction on the statute of limitations. The only thing we know about Meza's consideration of the instructions is the court asked both sides, 'Do you both accept the instructions to be given in this case?' Like the prosecutor, Meza's counsel responded, 'Yes, your honor.' The trial court instructed the jury on the lesser included misdemeanor offense, but gave no statute of limitations instruction. When the court instructed the jury on the lesser included

11.

misdemeanor offense, Meza's counsel did not object." (*Meza, supra,* 38 Cal.App.5th at p. 824, italics added.)

The court narrowly construed *Stanfill* to its facts, where the *defendant* had affirmatively asked for lesser included offense instructions. It reasoned that *Stanfill*'s "true holding" was "that a defendant forfeits the right to challenge a lesser included conviction as time-barred by *requesting* the lesser included instruction," and instead "read as dicta the *Stanfill* court's comment that a defendant may forfeit the right to challenge a lesser included conviction as time–barred by acquiescing to the prosecution's request for the lesser included instruction." (*Meza, supra*, 38 Cal.App.5th at p. 828.)

In a somewhat circular argument, the *Meza* court concluded that *Stanfill*'s extension of a forfeiture rule from a case where the defendant had affirmatively asked for the instructions to a case where a defendant acquiesced in the *prosecutor*'s requested instructions was legally unfounded because it "does not answer the question whether Meza forfeited the right to appeal by failing to object to the prosecutor's proposed lesser included instruction." (*Meza, supra,* 38 Cal.App.5th at pp. 827–828.)

Simply put, *Meza* rejected *Stanfill*'s dual holding, and instead thought that a "nonforfeiture rule *where the prosecution requests the lesser included instruction* establishes the better baseline. It will force prosecutors to be aware of the issue and to obtain an express waiver from defendant before the court presents the lesser included instruction to the jury. In that case, the defendant will have to make a perhaps difficult choice. If they accept the instruction and waive the objection, their conviction may stand despite the limitations problem. If they refuse the instruction, they will take their chances with the jury making an all–or–nothing decision of guilt on the greater offense." (*Meza, supra*, 38 Cal.App.5th at p. 829, italics added.)

However, *Meza*'s alternative to the *Stanfill* rule presupposes that the prosecutor requested the lesser instruction. In our record, nothing suggests he did so here. Indeed, the prosecutor even objected to a lesser instruction on force likely assault on the two

12.

deadly weapon counts. In other words, *Meza*'s so–called "baseline" is missing its "base" here. Further, by unilaterally shifting the analytical focus to the prosecution's actions in this way, the *Meza* court failed to address *Stanfill*'s concern for gamesmanship and strategic sandbagging by the defense.

In his dissent in *Meza*, Justice McKinster would have applied the *Stanfill* forfeiture rule because Meza's counsel had consented to and acquiesced in the lesser misdemeanor instruction, "put[ting] the facts of the present case squarely within the 'or acquiesced' rubric of *Stanfill*." (*Meza, supra*, 38 Cal.App.5th at p. 832, 835 (dis. opn. of McKinster, J.).) Justice McKinster also pointed out that, unlike in *Williams,* there was an obvious tactical reason for defense counsel in *Meza* to have agreed to the lesser included offense instruction even when the lesser offense was time–barred: to avoid a felony conviction that might have resulted had the jury been faced with an all–or–nothing choice. (*Meza, supra,* 38 Cal.App.5th at pp. 835–836.) So too here.

In *Beasley*, a case factually similar to ours, the defendant was charged with multiple counts of assault with a deadly weapon, but the jury convicted him of lesser included misdemeanor assaults. On appeal, the defendant argued the one–year statute of limitations for the misdemeanors barred the convictions and the People contended he had forfeited the issue under *Stanfill*. (*Beasley, supra,* 105 Cal.App.4th at pp. 1088–1089.)

The *Beasley* court concluded that *without any evidence of Beasley's acquiescence*, "and the trial court's sua sponte duty to instruct on all theories of a lesser included offense that find substantial support in the evidence, even over the defendant's objection [citation], it would be unwarranted speculation to conclude appellant forfeited his statute of limitations defense." (*Beasley, supra,* 105 Cal.App.4th at p.1090.)[8]

---

[8] The *Beasley* court also finessed its holding by stating that "even if Beasley failed to preserve the statute of limitations issue for review, this court may exercise its discretion to review it." (*Id.,* 105 Cal.App.4th at p. 1090.)

13.

Thus, unlike *Meza,* the *Beasley* court accepted the *Stanfill* rule, but found it factually inapplicable and reversed the misdemeanor convictions because *nothing in the record* indicated the defendant had either requested *or* acquiesced in the instruction on the lesser included assault offense. (*Beasley, supra*, 105 Cal.App.4th at pp. 1089–1090.) Also unlike in *Meza,* nothing in the *Beasley* record showed that the *prosecution* had requested the lesser instruction. (*Ibid.*) Neither *Stanfill*'s rule nor *Meza*'s rule would have been applicable to *Beasley*'s facts.

In contrast, here we have the evidence the *Beasley* court lacked, and we need not speculate because Yanez acquiesced in the instruction. In other words, because the *Beasley* court agreed with *Stanfill*'s test, but found it lacking on its record, *Beasley* would have followed *Stanfill* here and found forfeiture. *Meza* becomes the outlier and *Beasley* instead supports *Stanfill.*

Indeed, the *Meza* majority recognized that *Stanfill* and *Beasley* were distinct:

> "The *Beasley* court accepted the *Stanfill* rule as stated, but found it inapplicable and reversed the misdemeanor convictions because nothing in the record indicated the defendant either requested or acquiesced in the instruction on assault as a lesser included offense of assault with a deadly weapon. [Citation.] Our case is slightly different. It is uncontested Meza did not request the instruction, but there is some evidence of his acquiescence in his attorney's general assent to the prosecutor's instructional packet. Thus, unlike the courts in *Stanfill* and *Beasley*, we must answer the question whether his general assent to the lesser included instruction *proposed by the prosecutor* justifies holding he forfeited the

---

Yanez latches onto this alternative *Beasley* "holding" by reminding us that we too *could* exercise our discretion to address the merits of the statute of limitations issue even if it was forfeited. However, he offers no compelling reasons for why we *should* do so in this particular case. Such discretionary review is normally employed only when "a forfeited claim involves an important issue of constitutional law or a substantial right." (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7.) Purely statutory limitations on the commencement of actions are not constitutional issues, and no party has a substantial right to engage in gamesmanship and sandbagging. We therefore decline his invitation. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [whether to do so is a matter of an appellate court's sound discretion].)

14.

statute of limitations issue on appeal." (*Meza, supra,* 38 Cal.App.5th at p. 828, italics added.)

*Beasley* notwithstanding, therefore, the *Meza* court "decline[d] to extend [*Stanfill*'s] holding to allow forfeiture *where the prosecution requested the instruction* and there is no evidence defendant made an informed decision to relinquish his right to challenge a conviction for the time–barred lesser included offense on appeal." (*Meza, supra,* 38 Cal.App.5th at p. 829, italics added.) However, that is not what happened here as there is nothing to show the prosecution requested the instruction.

**D. Application.**

As discussed, our record fails to show whether either party requested the lesser included instruction on misdemeanor assault, but it does show that neither party objected when the court said it would give it. We also know that during the instruction conference summary the court placed on the record that both counsel affirmatively agreed to the instructions — including the misdemeanor lesser CALCRIM No. 915 — when each counsel was asked by the court. In our view, this is fundamentally different from a defense counsel's "general assent" to the "prosecutor's instructional packet" of instructions as in *Meza.* (*Id.*, 38 Cal.App.5th at p. 828.)

Moreover, following the prosecution's case in chief, Yanez's counsel brought a motion to dismiss the two deadly weapon counts under section 1118.1,[9] arguing that the "stick" in question was not a deadly weapon, and he cited — of all cases — *Beasley* in support. The part of the *Beasley* opinion counsel cited to the court involved the issue of whether a broomstick and a vacuum cleaner attachment could be deadly weapons or used in a manner capable of and likely to produce death or great bodily injury under section

---

[9] "[O]n motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, [the court] shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal." (§ 1118.1.)

15.

245.[10] (*Id.,* 105 Cal.App.4th at pp. 1086–1088.) However, counsel did not mention that the same statute of limitations issue that Yanez now relies on here was *addressed* in *Beasley*. Thus, although he was aware of *Beasley*, by not objecting later to the misdemeanor assault instruction, counsel might have been relying on the second part of the *Beasley* opinion for possible later use on appeal.[11] Similarly, although defense counsel here had successfully requested and pushed for lesser included force–likely instructions for the two deadly–weapon counts — over the prosecutor's objections — he said nothing about simple assault, and expressed no objections when the court said it would instruct on the "lesser of the lesser." This would be consistent with strategically assenting to the court's indicated misdemeanor assault instruction. It would have given him a clear tactical benefit because it not only gave the jury an alternative to having to finding Yanez guilty of the lesser non–strike felony assault under section 245, subdivision (a)(4),[12] but it also preserved a possibility for alternative misdemeanor

---

**10** When *Beasley* was decided in 2003, section 245, subdivision (a)(1) included both assault with a deadly weapon *and* assault by means likely to cause great bodily injury. (*Beasley, supra,* 105 CalApp.4th at p. 1086.) There was no section 245, subdivision (a)(4) at the time, and there would have been no reason for lesser included instructions regarding the two now–distinct aggravated assault subdivisions. (See *Aguayo, supra,* 13 Cal.5th at pp. 983–989 [tracking the history of section 245 through and including when the Legislature separated the offense into these two flavors of the same offense — subdivisions (a)(1) and (a)(4) — in 2011].) Instead, the only lesser offense applicable at the time was misdemeanor assault.

**11** It would have been a risky gambit because it had to rely on the prosecutor not picking up on the statute of limitations part of the *Beasley* opinion (or *Meza*, for that matter). But the prosecutor was focused on the felony assault charges, and how the "stick" was both a deadly weapon *and* that it had been used with force likely to produce great bodily injury, apparently never realizing the problematic potential misdemeanors lurking in the background.

**12** See *People v. Haykel* (2002) 96 Cal.App.4th 146, 148 ["[B]ecause assault by means of force likely to produce great bodily injury is not listed as a serious felony … a conviction for that crime may not be counted as a strike under the 'Three Strikes' law."]. Moreover, Yanez had already suffered one strike conviction (the 2018 robbery), and a

16.

convictions that would be guaranteed to be reversed on appeal as time–barred under *Meza*.

We find *Meza*'s narrow view encourages the gamesmanship that originally concerned the *Stanfill* court (and Justice McKinster's dissent in *Meza*), and we decline to follow it. Instead, we agree with *Stanfill,* the dissent in *Meza*, and even *Beasley,* that the forfeiture rule applies when the record shows the defendant either asked for *or* affirmatively acquiesced in the instruction on the lesser included offense. (*Stanfill, supra*, 76 Cal.App.4th at p. 1150; *Meza, supra,* 38 Cal.App.5th at p. 832, 835 (dis. opn. of McKinster, J.); *Beasley, supra*, 105 Cal.App.4th at pp. 1089–1090.)

## II. The Felony Vandalism Sentence.

### A. Factual Background.

In the pleadings, the prosecution alleged five sentencing enhancements: First, that Yanez had previously been convicted of robbery, a serious felony and a strike (§§ 667, subds. (a), (c)–(j) & 1170.12, subds. (a)–(e)),[13] and also that four rule–based aggravating sentencing factors were true (See Cal. Rules of Court,[14] rule 4.421, subds. (a)(1), (b)(1), (b)(2), and (b)(3)).

In a bifurcated trial, the jury found the prior conviction allegation true. It also found two of the four sentencing factors true: that the vandalism involved great violence (rule 4.421, subd. (a)(1)), and that Yanez engaged in conduct that was a serious danger to society (rule 4.421, subd. (b)(1)). However, the jury was not asked to determine the other two alleged sentencing factors: whether Yanez's prior convictions were numerous or

---

conviction for the more serious assault with a deadly weapon charge would have made him a third–striker in the future.

[13] The court later struck the serious felony allegation under section 667, subdivision (a) because a felony vandalism conviction is inapplicable.

[14] All undesignated references to rules are to the California Rules of Court.

increasingly more serious (rule 4.421, subd. (b)(2)), or whether Yanez had previously served a prison term (rule 4.421, subd. (b)(3)).[15]

Yanez did not waive jury trial on these latter two factors, nor did he admit them. Rather, the trial court said they were "to be considered by the Court and not presented to the jury." Later, at the sentencing hearing, the trial court found them to be true.

In an additional twist, after trial a deputy probation officer added two more rule–based aggravating factors in her pre–sentencing report, neither of which had been alleged by the prosecution, proven at trial, or admitted by Yanez: that Yanez was on parole and probation at the time of the current offenses (rule 4.421, subd. (b)(4)), and that his prior performance while on probation or parole was unsatisfactory (rule 4.421, subd. (b)(5)). on the prior strike and now *six* aggravating factors, the deputy probation officer recommended that the court impose an aggravated three–year sentence on the felony vandalism conviction and double it to six years.

At the sentencing hearing, the trial court also referred to facts found only in the deputy probation officer's report, which it found "enlightening" and not "insignificant to the Court's analysis here as to what has gone on." These included a 2017 offense involving the same store clerk victim, the fact that Yanez had "picked up a misdemeanor conviction" while the current case was pending, and that Yanez had an active pending misdemeanor case at the time of sentencing. None of these facts was proven at trial, or admitted, and Yanez did not waive a jury's determination of their truth.

The court imposed the recommended six–year sentence.

## B.  Legal Background.

"In general, we review a trial court's sentencing decisions for abuse of discretion. [Citation.]  'An abuse of discretion is found where the court "relies upon circumstances

---

[15] Although the jury had found that Yanez had previously been convicted of robbery in 2018, it was not asked to determine the sentencing disposition in the case.

that are not relevant to the decision or that otherwise constitute an improper basis for decision." ' " (*People v. Gonzalez* (2024) 107 Cal.App.5th 312, 323 (*Gonzalez*).)

In 2022, section 1170, subdivision (b) was "amended to prohibit imposition of an upper term sentence unless aggravating circumstances justify that term and the facts underlying any such circumstance, other than a prior conviction, 'have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.' " (*People v. Lynch* (2024) 16 Cal.5th 730, 742 (*Lynch*).)[16]

In *Erlinger v. United States* (2024) 602 U.S. 821 (*Erlinger*), the United States Supreme Court rejected an argument that the jury trial exception regarding prior convictions also "permits a judge to find perhaps *any fact* related to a defendant's past offenses, including whether he committed them on different occasions" within the meaning of the federal sentencing statute at issue. (*Id*. at p. 837, italics added.) Instead, the Court held that "a judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.' " (*Id*. at p. 838, quoting *Mathis v. United States* (2016) 579 U.S. 500, 511–512.)

In doing so, the Court majority reaffirmed the basic rationale of *Apprendi v. New Jersey* (2000) 530 U.S. 466, and rejected arguments from the dissent that, historically, "[w]hen exercising their sentencing authority, judges were also presumed to have the power to find and consider nearly any fact deemed relevant to the penalty." (See *Erlinger, supra,* 602 U.S. at p. 875 (dis. opn. of Jackson, J.); see also *id.* at p. 843 [rejecting an argument that "the Fifth and Sixth Amendments' original meaning and

---

[16] See also Rule 4.420(b) ["The court may only choose an upper term when (1) there are circumstances in aggravation of the crime that justify the imposition of an upper term, and (2) the facts underlying those circumstances have been (i) stipulated to by the defendant, (ii) found true beyond a reasonable doubt at trial by a jury, or (iii) found true beyond a reasonable doubt by the judge in a court trial."].

'deep' common–law traditions authorize judges at sentencing to find all manner of facts about an offender's past crimes"].)

As a result, while sentencing procedures and practices do retain some flexibility with which to experiment, such experiments "must remain within the Fifth and Sixth Amendments' guardrails." (*Erlinger, supra,* 602 U.S. at p. 832.) Therefore, "[v]irtually 'any fact' that ' "increase[s] the prescribed range of penalties to which a criminal defendant is exposed" ' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." (*Id*. at p. 834.)

After *Erlinger*, in 2025 the California Supreme Court made it clear that *Erlinger* requires "that *any fact, beyond the bare fact of a prior conviction*, that exposes a defendant to harsher punishment, must be found by a jury beyond a reasonable doubt, unless the defendant stipulates to its truth or waives a jury trial. This jury trial guarantee retains its vitality even if the inquiry is ' " ' straightforward.' " ' [Citation.] 'There is no efficiency exception to the Fifth and Sixth Amendments.' [Citation.] Only when aggravating facts have been proven as the Constitution requires may the court then rely on them to conclude, in its discretion, that those facts justify an upper term." (*People v. Wiley* (2025) 17 Cal.5th 1069, 1083–1084 (*Wiley*), italics added,)

Relevant here, for example, a jury must "determine whether the particular details of a defendant's criminal history establish an unsatisfactory probation performance or demonstrate convictions of increasing seriousness, before a trial court can rely on those facts to justify an upper term sentence." (*Wiley, supra,* 17 Cal.5th at p. 1078.) Simply put, "a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm." (*Id.* at p. 1086, fn. omitted.)

**C. Application.**

At the sentencing hearing here, the trial court found two rule 4.421 factors true without a jury's determination, a waiver, or an admission. Similarly, the court relied on two other sentencing factors — found only in the deputy probation officer's report — neither of which was admitted by Yanez or proved to the jury. Both parties agree that this was reversible error.[17] As do we.

"[A] Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established. The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements. If the reviewing court cannot so determine, applying the *Chapman* standard of review, the defendant is entitled to a remand for resentencing."[18] (*Lynch, supra,* 16 Cal.5th at p. 768; see *Wiley, supra*, 17 Cal.5th at p. 1087; *Gonzalez, supra,* 107 Cal.App.5th at pp. 331–333.)

We cannot conclude beyond a reasonable doubt what the jury would have done had it been asked to determine the other four factors, let alone what evidence may have been admitted (or admissible) to prove them. Similarly, we cannot be certain what the trial court would have done had its sentencing discretion been circumscribed solely by the jury's finding on the prior conviction and only two of the six factors in aggravation. Put differently, just as we may "not reverse orders based upon speculation," and instead

---

[17] Moreover, because the court also relied on facts found only in the probation report, the court further erred because a probation officer's report is not admissible evidence to prove circumstances in aggravation. (Cf. *People v. Orloff* (2016) 2 Cal.App.5th 947, 950, fn. 2 [a probation report cannot be used in a substantial evidence analysis because we are limited to the actual evidence presented].)

[18] *Chapman v. California* (1967) 386 U.S. 18.

may only "opine on [the trial court's] actual ruling" (*People v. Mills* (2025) 114 Cal.App.5th 270, 272), we equally may not affirm them.

We therefore vacate the sentence on the felony vandalism conviction, and remand for further proceedings in light of and in compliance with *Erlinger*, *Wiley*, and *Lynch*. (See *Lynch, supra,* 16 Cal.5th at pp. 776–778; *Wiley, supra,* 17 Cal.5th at pp. 1082–1084.)

On remand, "[t]he proper procedure for adjudicating such aggravating facts is as follows: [Yanez] may assert the right to a jury trial, may waive jury in favor of a court trial, or may waive trial altogether. Subject to the standard rules of evidence both parties may stipulate to the admission of probation reports or other evidence bearing on [his] social and educational history, as well as other information relevant to sentencing, including criminal history. The burden is on the People to prove beyond a reasonable doubt the facts relied on to justify an upper term sentence. If those facts are properly proven, the court may take them into account and exercise its discretion under section 1170(b) to determine what sentence to impose, keeping in mind the statutory limits on upward departures from the midterm and the requirement for stating its reasons on the record." (*Wiley, supra,* 17 Cal.5th at p. 1086.)

## III. Conclusion

Yanez forfeited his statute of limitations claim on appeal by assenting at trial to a lesser included instruction on simple assault without objection. The two misdemeanor assault convictions are therefore affirmed. The felony vandalism conviction is affirmed but the sentence is reversed and vacated.

The matter is remanded to the trial court for further proceedings as outlined above. Afterwards, the court shall hold a new sentencing hearing, and the superior court clerk shall prepare a new abstract of judgment with copies forwarded to the Department of Corrections and Rehabilitation and all other necessary entities.

## **DISPOSITION**

The judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

SNAUFFER, J.

WE CONCUR:


DETJEN, Acting P. J.


MEEHAN, J.